**James B. KNIGHT, Appellant,**

v.

**NASSAU COUNTY CIVIL SERVICE COMMISSION, Appellee.**

**No. 667, Docket No. 80–7821.**

United States Court of Appeals, Second Circuit.

Argued Feb. 26, 1981.

Decided May 18, 1981.

ist III to Personnel Specialist IV, despite the fact that he had done well on promotional examinations, and his transfer from the Commission's Test Development Division to the Recruitment Division for the purpose of recruiting minority applicants were impermissibly based on racial factors. After a nonjury trial, Judge George C. Pratt of the United States District Court for the Eastern District of New York found for the Commission on both claims.

We agree with the district court that the Commission adequately rebutted Knight's prima facie case under Title VII on the failure to promote claim, and that Knight did not establish the intentional racial discrimination that would give rise to a violation of equal protection. Accordingly, we affirm Judge Pratt's dismissal of this ground for relief. We reverse on the assignment to minority recruitment claim, however, finding that the assignment constituted an impermissible classification based on race in violation of both Title VII and the equal protection clause.

### FACTS

Appellant Knight, a black man, has been employed by the Nassau County Civil Service Commission since 1968 in the position of Personnel Specialist III. From 1968 until 1973, Knight worked in the Test Development Division, preparing civil service examinations for the Commission under the supervision of Charles Teubner, who was a Personnel Specialist IV. Although Knight did well on promotional examinations taken in 1969 and 1973, *i. e.*, he was among the top three on each examination and therefore was eligible for promotion, he was not promoted to Personnel Specialist IV. Instead, between 1969 and 1974, four white applicants, who also were eligible for promotion based on the two examinations, were promoted to level IV positions. Appellee Commission presented evidence below, however, and the district court found, that the latter two promotions (those in 1973 and 1974) were a matter of reclassifications and budget increases catching up with reality, for

Harvey W. Spizz, Spizz & Gans, Mineola, N. Y., for appellant.

Robert O. Boyhan, Deputy County Atty., Mineola, N. Y. (Edward G. McCabe, County Atty. of Nassau County, Mineola, N. Y., on the brief), for appellee.

Before FEINBERG, Chief Judge, OAKES, Circuit Judge, and MOTLEY, District Judge.*

OAKES, Circuit Judge:

This appeal is from the district court's rejection of appellant James Knight's claims that the Nassau County Civil Service Commission racially discriminated against him in his employment, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e–17, and the equal protection clause of the Fourteenth Amendment. Specifically, Knight argued that both the Commission's failure to promote him from the position of Personnel Special-

---

* Of the Southern District of New York, sitting by designation.

the two promoted employees had in fact been doing Personnel Specialist IV work for some time.[1] Knight also complained that he was not promoted to fill Teubner's position when the latter retired in April of 1973. Instead, Florence Caddle, a co-worker of Knight's in the Test Development Division, who was already a Personnel Specialist IV, had been working for the Commission since 1966, had previously worked as a psychologist for the Air Force Test Development Division, and had been working independently and with little supervision from Teubner, took over as head of the Division when Teubner left.

Rather than being promoted within the Test Development Division, Knight was transferred in September of 1973 to the Commission's Recruitment Division, with the expectation that he would participate in a program to encourage more members of minority groups to apply for Civil Service jobs. Knight claimed that both the failure to appoint him to Personnel Specialist IV positions[2] and the reassignment to minority recruitment were based on his race and therefore violated Title VII and the equal protection guarantee of the Fourteenth Amendment.

The Commission admitted that Knight's race was a significant factor in the decision to assign him to minority recruitment.[3] With respect to the failure to promote claim, however, the Commission argued and the court below found that in recent years the Nassau County Civil Service Commission has increasingly relied upon examinations prepared by the New York State Civil Service Commission, and therefore the County's needs for test development personnel have declined significantly.[4] In addition, in the early 1970s employment qualification testing problems became more complex, with greater test reliability and validity required, and Knight, unlike Caddle, had no background in the field of psychometrics. Most importantly, Knight's work in test development had been of unacceptable quality. Based on statistics from the years 1968 through 1977, the district court found that Knight had prepared significantly fewer examinations than had either Teubner or Caddle, and his tests had resulted in a much greater number of complaints and corrections. There was also evidence that Knight took an inordinately long time to do his work and that the product was often convoluted and unsatisfactory.

Judge Pratt, after a bench trial on Knight's employment discrimination claims under Title VII and 42 U.S.C. §§ 1981 and 1983, found for the Commission.

## DISCUSSION

### I. The Failure to Promote Claim

■ Judge Pratt held that Knight had made out a prima facie case of discriminatory treatment under Title VII, by showing that he was black, had applied for Personnel Specialist IV positions, had done well on promotional examinations, and was passed over in favor of white applicants. *See* *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). The burden then shifted to the Commission "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Id.* The employer thus had the "intermediate evidentiary burden" of pro-

---

1. Municipalities became subject to Title VII only in 1972 (pursuant to the Equal Employment Opportunity Act of 1972 amendments to Title VII, Pub.L.No.92–261, 86 Stat. 103), so allegedly discriminatory acts prior to 1972 cannot form the basis for Title VII claims. The promotion of the two white applicants based on the 1969 examination, therefore, is not remediable in this suit.

2. In the Recruitment Division, Knight is still a Personnel Specialist III.

3. The Commission also suggested other factors for the assignment, including Knight's familiarity with testing procedures, which would help him in counseling potential applicants for Civil Service jobs, his residence in the Hempstead area, where the minority recruitment effort was focused, and the decrease in the amount of work to be done in the Testing Division.

4. In fact, Caddle is now the only employee remaining in the County Commission's Test Development Division; neither of the vacancies created by Teubner's retirement and Knight's transfer has been filled.

ducing evidence which "raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Texas Department of Community Affairs v. Burdine*, —— U.S. ——, ——, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981). To satisfy this burden, "the employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." *Id.* at ——, 101 S.Ct. at 1096. The burden then shifts back to the employee to prove by a preponderance of the evidence that the proffered reasons are unworthy of belief or merely pretextual. *Id.* at 1094–95; *Board of Trustees of Keene State College v. Sweeney*, 439 U.S. 24, 99 S.Ct. 295, 58 L.Ed.2d 216 (1978) (per curiam); *Lieberman v. Gant*, 630 F.2d 60, 65 (2d Cir. 1980).

Here the reasons presented to the Commission for not promoting Knight to fill Teubner's position (which seems to have been the crux of Knight's failure to promote claim) were that the County's test preparation needs had declined, Knight did not have the proper training to prepare the new kinds of tests that were required, and, most importantly, Knight did not do much work and the work that he did was unsatisfactory. Judge Pratt's findings that Caddle was better qualified for the position, did better work, and was more efficient are not clearly erroneous, *see* Fed.R.Civ.P. 52(a), and certainly satisfy the Commission's burden of production. *See Burdine*, —— U.S. at ——, 101 S.Ct. at 1097 (defendant employer need not show that person hired or promoted is more qualified than plaintiff, but only that the employment decision was not based upon unlawful criteria).

▪ Knight contends, however, that the Commission failed to carry its burden of production because it presented no "objective competent evidence," but rather only "subjective" evaluations by his superiors. It is true that an employer may not use wholly subjective and unarticulated standards to judge employee performance for purposes of promotion. *See Crawford v. Western Electric Co.*, 614 F.2d 1300, 1313–

17 (5th Cir. 1980); *Baxter v. Savannah Sugar Refining Corp.*, 495 F.2d 437, 440–41 (5th Cir.), *cert. denied*, 419 U.S. 1033, 95 S.Ct. 515, 42 L.Ed.2d 308 (1974); *Rowe v. General Motors Corp.*, 457 F.2d 348, 358–59 (5th Cir. 1972). But the facts underlying the Commission's failure to promote Knight—his lack of background in the field of psychometrics, the amount of time that he took at his work, and the significantly greater number of appeals and corrections on the examinations he prepared as opposed to those prepared by others in the Test Development Division—can be objectively evaluated. *See generally* Stacey, *Subjective Criteria in Employment Decisions Under Title VII*, 10 Ga.L.Rev. 737, 748–52 (1976). The fact that satisfaction of job performance criteria is judged by an employee's superiors does not necessarily warrant the inference that the evaluations are subjective. Although Knight claims that the three members of the Civil Service Commission (one of whom was black) who ruled on complaints about examinations were not "experts" in psychological testing techniques, there is no evidence that they did not act in a fair and nondiscriminatory manner. Therefore we hold that the Commission met its burden under Title VII of producing admissible evidence of legitimate, nondiscriminatory reasons for its failure to promote Knight. Judge Pratt's finding that Knight failed to carry his ultimate burden of persuasion, *i. e.*, that he failed to prove that the legitimate reasons offered by the Commission for its failure to promote him were false or more pretexts, is not clearly erroneous and will not be disturbed.

▪ In failing to prove disparate treatment for a Title VII claim based on the failure to promote, *see International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 335 n.15, 97 S.Ct. 1843, 1854, 52 L.Ed.2d 396 (1977) (proof of discriminatory motive required for Title VII disparate treatment cases, though not for Title VII disparate impact cases), Knight has also necessarily failed to meet the purposeful discrimination requirement for a section 1983 violation based on equal protection or

a section 1981 claim, *see Personnel Administrator v. Feeney*, 442 U.S. 256, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979); *Washington v. Davis*, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976); *Grigsby v. North Mississippi Medical Center, Inc.*, 586 F.2d 457, 460–61 (5th Cir. 1978).

II. *The Assignment to Minority Recruitment Claim*

The Commission's assignment of Knight to minority recruitment, unlike its failure to promote him, was clearly based in significant part on his race. The Commission apparently thought that Knight would develop a better rapport than would a white person with the members of minority groups whom the Commission was trying to recruit. Although his salary and benefits remained unchanged, Knight claims that the assignment was racist and demeaning.

■ It is true that Title VII allows employees to be classified on the basis of their religion, sex, or national origin if such a classification "is a bona fide occupational qualification reasonably necessary to the normal operation" of a particular business. 42 U.S.C. § 2000e–2(e); *see* Note, *Race as an Employment Qualification to Meet Police Department Operational Needs*, 54 N.Y. U.L.Rev. 413, 435–38 (1979). However, Congress specifically excluded race from the list of permissible bona fide occupational qualifications. *See id.* at 436 & n. 98; *Detroit Police Officers Association v. Young*, 446 F.Supp. 979, 1004–05 (E.D.Mich. 1978), *rev'd on other grounds*, 608 F.2d 671 (6th Cir. 1979), *petition for cert. filed*, 48 U.S.L.W. 3466 (U.S. Jan. 10, 1980) (No. 79–1080).

■ Concededly, it is permissible, both constitutionally and under Title VII, to take race into account for the purpose of remedying past racial discrimination. Thus, for example, the Supreme Court in *United Steelworkers v. Weber*, 443 U.S. 193, 201–04, 99 S.Ct. 2721, 2726–28, 61 L.Ed.2d 480 (1979), interpreted Title VII as allowing race-conscious affirmative actions plans, but only for the purpose of favoring blacks, which the Court viewed as in furtherance of congressional intent. *See also Fullilove v. Klutznick*, 448 U.S. 448, 100 S.Ct. 2758, 65 L.Ed.2d 902 (1980) (limited use of racial criteria to favor minorities in federally-funded public works projects does not violate equal protection). Knight's assignment to minority recruitment, however, was not affirmative action, or benign discrimination, intended to correct racial imbalance. Rather, it was based on a racial stereotype that blacks work better with blacks and on the premise that Knight's race was directly related to his ability to do the job. No matter how laudable the Commission's intention might be—in trying to attract more minority applicants to the Civil Service—the fact remains that Knight was assigned a particular job (against his wishes) because his race was believed to specially qualify him for the work. This is a violation of Title VII. And the other reasons advanced for Knight's reassignment, *e. g.*, lack of work for him to do in testing, though perhaps good reasons for transferring him to the Recruitment Division, do not justify the specific assignment to minority recruitment.

■ The Commission's assignment of Knight to minority recruitment based on his race is also a violation of equal protection, remediable under 42 U.S.C. § 1983. The Commission conceded racially-based discriminatory intent, the requirement for an equal protection claim, *see Washington v. Davis*, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976), and this was not a case of benign discrimination. Accordingly, the district court's judgment that the assignment to minority recruitment does not violate Title VII or equal protection is reversed. The case is remanded for appropriate relief, although what that may be in terms of monetary damages, as distinguished from injunctive relief, is hard to know.

Judgment affirmed in part and reversed and remanded in part.