Sonia V. GRANT, Plaintiff,

v.

**MORGAN GUARANTY TRUST COMPANY OF NEW YORK,**
Defendant.

No. 81 Civ. 4406 (JES).

United States District Court,
S.D. New York.

July 2, 1986.

Sonia V. Grant, Brooklyn, N.Y., pro se.

Davis Polk & Wardwell, New York City, Attorneys for defendant; Howard A. Ellins, of counsel.

## OPINION AND ORDER

SPRIZZO, District Judge:

The following Opinion and Order constitutes the Court's findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52.

## BACKGROUND

Plaintiff, Sonia V. Grant, a black female, filed this action, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.,*[1] and 42 U.S.C. § 1981,[2] against her former employer, the Morgan Guaranty Trust Company of New York ("Morgan"). Ms. Grant has alleged that Morgan discriminated against her on the basis of race and sex in compensation, promotion, assignment, transfer and other terms, conditions and privileges of employment, and that these conditions forced her to resign. *See* Complaint at ¶ 1. This res-

ignation is claimed to be a "constructive discharge." *See id.* at ¶ 16(b). Plaintiff seeks injunctive and declaratory relief, compensatory and punitive damages, and costs, including attorney's fees. *See id.* at ¶ 17.

■ On April 20, 1979, plaintiff filed timely complaints with the Equal Employment Opportunity Commission ("EEOC")[3] and the New York City Commission of Human Rights ("NYCCHR"). On June 25, 1980, plaintiff withdrew her then-pending complaint before the NYCCHR prior to any determination, *see* Def.Ex. MM, and on April 24, 1981, the EEOC determined that there was "no reasonable cause to believe that the [plaintiff's] allegation is true." *See* Def.Ex. NN.[4] The EEOC issued a "Notice of Right to Sue," and, on July 15, 1981, the plaintiff filed her complaint and properly invoked the jurisdiction of this Court pursuant to 42 U.S.C. § 2000e–5(f)(1) and 28 U.S.C. § 1343(4).

Plaintiff's motion for class certification, brought pursuant to Fed.R.Civ.P. 23(c),

---

1. 42 U.S.C. § 2000e–2(a) provides that it is an unlawful employment practice for an employer:
 (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
 (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

2. 42 U.S.C. § 1981 provides that:
 All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

3. Plaintiff's EEOC charge states:
 I. I was not promoted to a college entry position after I earned my B.A. Degree and I resigned because of this. I began with Mor-

gan Guaranty Trust Company in June of 1969 and was an Operations Control Clerk when I resigned effective March 5, 1979.
 II. Robert Cranmer, Personnel Representative, who interviewed me after I applied for a promotion told me that I could not be promoted because my work had been satisfactory but they could hire someone from the outside whose work was more than satisfactory.
 III. I believe that I have been discriminated against because of my race (Black) and my sex (Female), for the following reasons:
 1. Upon belief, it is Morgan Guaranty's policy to promote to a college entry level position employees who have earned a college degree.
 2. Upon information and belief, Morgan Guaranty does not post job openings but they were hiring at the time I applied.
 Defendant's Exhibit ("Def.Ex.") LL.

4. The absence of a finding of reasonable cause does not bar a suit in federal court, *see McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 798–99, 93 S.Ct. 1817, 1822, 36 L.Ed.2d 668 (1973), but is admissible under Fed.R.Evid. 803(8)(C) as evidence of lack of discrimination. *See Chandler v. Roudebush,* 425 U.S. 840, 863 n. 39, 96 S.Ct. 1949, 1960 n. 39 (1976).

was denied. *See Grant v. Morgan Guaranty Trust,* 548 F.Supp. 1189, 1193 (S.D.N.Y.1982). This Court also dismissed all of plaintiff's Title VII claims except those raised before the EEOC, namely, the promotion and "constructive discharge" claims arising from her 1979 resignation. *Id.* at 1192. While the § 1981 claims were not limited to these two claims, it was held that plaintiff could only raise a claim of race discrimination because sex discrimination is not cognizable under § 1981. *See id.* at 1192 & n. 5; *see also Devine v. Lonschein,* 621 F.Supp. 894, 896 (S.D.N.Y.1985).

At the subsequent non-jury trial of this action, plaintiff was required to proceed *pro se* because of her attorney's refusal to proceed with the trial on her behalf. The Court then elicited whatever testimony plaintiff desired to offer in support of her claims. *See* Tr. at 5–12.[5] However, it became apparent that plaintiff's attorney had not properly consulted with plaintiff prior to trial, even though he previously had been granted an extensive adjournment for that purpose, and had been afforded ample notice of the trial date. Therefore, the Court afforded plaintiff an opportunity to

submit a post-trial memorandum to synthesize any evidence of discrimination shown at trial, and directed that the record be left open so that plaintiff could offer evidence in addition to that elicited at trial. *See id.* at 112–13. Plaintiff retained no new counsel, nor did she thereafter file an application to have counsel appointed. However, plaintiff did successfully seek several adjournments so that she could file an adequate post-trial memorandum. That memorandum was filed, and, as is evident from that memorandum and the ensuing discussion set forth herein, plaintiff has ably argued the merits of her claims.

## I.

### TITLE VII and § 1981 CLAIMS

#### FACTS

*Plaintiff's Employment History*

██ On June 3, 1969, Sonia Grant was hired as a Transfer Checker in Morgan's Stock Transfer Department. *See* Pre-Trial Order ("PTO") at ¶¶ 5(2), 5(3).[6] Her job

---

5. On February 14, 1983, after this Court had denied plaintiff's Rule 23 motion for class certification, *see Grant, supra,* 548 F.Supp. at 1193, plaintiff's attorney moved to withdraw from his representation of the plaintiff pursuant to General Rule 3(c) of the Rules of the United States District Court for the Southern District of New York. The basis for the withdrawal application was an unsuccessful attempt to resolve the case via a settlement agreement, which was originally reached by counsel for the parties. Plaintiff had initially accepted the agreement. Ms. Grant, however, later refused to settle and informed her attorneys that because she no longer had confidence in them she would seek other counsel.

The motion was granted, and on March 30, 1983, a stipulation and order for the substitution of counsel was filed, pursuant to which new counsel agreed to represent plaintiff. As noted above, new counsel was afforded an extensive adjournment to prepare the case and was specifically told that the matter would proceed to trial when called. When the case was first called for trial, the matter was adjourned for one week because of an alleged death in counsel's family. On the morning of trial, plaintiff's counsel failed to appear, the matter was adjourned again, and counsel was directed to appear that afternoon.

At that time, counsel appeared, but refused to proceed and requested a further adjournment, claiming that because of the death in his family he was psychologically unprepared to proceed. This request was denied because both plaintiff and her attorney had been told by the Court, at a Pre-Trial Conference two months earlier, that plaintiff would have to proceed *pro se* or have her claim dismissed if her attorney was not prepared for trial. *See* Tr. at 5.

6. The parties have stipulated to certain facts and the admissibility of most of defendant's relevant records in a Pre-Trial Order ("PTO"). Originally, both plaintiff and defendant submitted proposed Pre-Trial Orders. Plaintiff's first proposed PTO was filed on September 6, 1983. Counsel for defendant then submitted its proposed PTO, signed in the firm's name. Thereafter, plaintiff's counsel submitted another PTO, which was an exact copy of defendant's proposed PTO. This last PTO was signed by Sonia Grant, *pro se,* but lacked the address required by Fed.R.Civ.P. 11. It was also originally signed by defendant's attorney in the firm's name, also a violation of Rule 11, but at some later unknown date the firm's name was apparently "whited out." This PTO was signed and filed by the Court on September 15, 1983. Notwithstanding the irregularities in the signatures, both the par-

classification was eventually changed to "Control Clerk I" because of a departmental reorganization—not because of a promotion. *See id.* at ¶¶ 5(3), 5(4). Ms. Grant remained in this position without a promotion until her resignation in 1979. *See id.* at ¶ 5(4).

On March 2, 1979, plaintiff submitted a letter of resignation to Morgan's Chairman of the Board, Walter Page. *See* Def.Ex. JJ. This letter makes no mention of discrimination. *See id.* Morgan re-evaluated its decision not to promote Ms. Grant, *see* Tr. at 42–43 (McGlynn), but found that its original decision was appropriate. *See* Def.Ex. KK (Letter of William Eiseman, Senior Vice President of Morgan, dated March 16, 1979).

During plaintiff's employment, Morgan had a policy of evaluating all employees once a year to determine whether each employee was eligible for a salary increase. These reviews were recorded on "salary review forms." *See* PTO at ¶ 5(5); *see also* Tr. at 40, 55; Def.Ex. B–Y. Various levels of supervisors contributed to the evaluation process. *See* Tr. at 55. Employees were rated on job knowledge, accuracy, productivity, initiative, assimilation, sense of responsibility towards work and towards others, appearance and courtesy. *See* Def.Ex. B–Y. Daily records of employees' instances of lateness and absence were also made and maintained. *See* Def.Ex. UU.

The employees received grades of: (1) "less than satisfactory;" (2) "satisfactory;" (3) "above average;" and (4) "outstanding." *See id.* Plaintiff never received a grade higher than "satisfactory." *See* PTO at ¶ 5(7); *see also* Def.Ex. B–Y. There is undisputed evidence that plaintiff's overall job performance was rated "unsatisfactory" in three reviews. *See* PTO at ¶ 5(8); Def.Ex. C, E, L.

Plaintiff claims that a supervisor had explained to her that the grades of "above average" and "outstanding" were reserved for the evaluations of the supervisors' performance, and that therefore the rating of "satisfactory" was excellent for non-supervisory personnel. *See* Tr. at 26.[7] However, Philip Alfieri, a supervisory assistant for Morgan with responsibility for maintaining and reviewing employee performance evaluations, *see* Tr. at 53, testified that an evaluation of "satisfactory" was the minimum level at which an employee could retain her position. *See* Tr. at 60. The Court accepts Alfieri's testimony as credible and concludes that the grade of "satisfactory" was the lowest level of acceptable performance and rejects plaintiff's testimony that ratings of "above average" and "outstanding" were given only to supervisory personnel.

Instances of employees' lateness and absence ("L/A") were recorded daily on time sheets. *See* Def.Ex. UU. These records reveal that plaintiff had a history of excessive lateness and absence. In her ten-year employment with Morgan, without consid-

---

ties and this Court have treated this PTO as effective and operative. *See* Tr. at 10, 35.

Under Rule 11, all pleadings, motions and other papers presented by an attorney to a court must be signed by the attorney and include the attorney's address. *See* Fed.R.Civ.P. 11. While this Court does not condone violations of Rule 11, it is evident that such irregularities in signatures may be treated as mere technical defects when it is clear that the parties have endorsed the paper and that the violations were inadvertent. *See Burak v. Pennsylvania,* 339 F.Supp. 534, 535 n. 2 (E.D.Pa.1972); Wright & Miller, *Federal Practice and Procedure* § 1334; *see also Filler v. Port Washington Union Free School Dist.,* 436 F.Supp. 1231, 1234 (E.D.N.Y.1977). Under the circumstances of this case, the Court finds that the irregularities with respect to the signatures appearing on the PTO which was filed on Sep-

tember 15, 1983 should be treated as mere technical defects, and that therefore the PTO is binding.

**7.** Plaintiff alleged that "Mr. Nunzio" had told her that her work was excellent and that a notation of "satisfactory" for non-supervisory personnel signified excellent job performance. *See* Tr. at 26. She alleged that when she heard this, she made a notation on her salary review form because she objected to this policy and to the amount of her raise. *Id.* Plaintiff, however, has not introduced any evidence to substantiate this claim and the defendant has introduced the evaluation signed by a "Nuncio Carrozzo," Mrs. Grant's supervisor, which is notable for its lack of notation by the plaintiff. *See* Def.Ex. Y; *see also* Tr. at 26–27.

ering that plaintiff took three maternity leaves and worked four days per week at certain times, Sonia Grant was late approximately fifty times and absent another seventy-five times. *See* Def.Ex. UU. Also, plaintiff's overall L/A record was rated "unsatisfactory" five times. *See* PTO at ¶ 5(8).

Plaintiff stated that these L/A records are inaccurate, *see* Tr. at 30, 102–06, and that she was "there every day and on time." *See* Tr. at 30. The Court does not find these claims to be credible. First, plaintiff has failed to adduce any evidence to substantiate her contention that Morgan's records were inaccurate. Secondly, it has been stipulated that plaintiff's annual salary increase was deferred for six consecutive years because of her poor L/A and marginal performance records. *See* PTO at ¶ 5(9).

In her Post-Trial Memorandum, ("Pl. Post-Trial Memo") plaintiff stated that "all of her illnesses and medical excuses were documented ... [and] substantiated at all times by [her] doctor...." *See* Pl. Post-Trial Memo at 48. This statement is not supported by plaintiff's evidence. Plaintiff submitted only one doctor's note, dated December 9, 1978, which merely refers to an extension of her third maternity leave. *See* Exhibit F to Pl. Post-Trial Memo ("Pl.Ex. F").

Plaintiff's further contention that Morgan never informed her of its L/A policy, *see* Tr. at 105–106, is rebutted by overwhelming credible evidence that she was informed of this policy. There was credible testimony that all Morgan employees were issued a manual describing the company's attendance policies. *See* Tr. at 57 (Alfieri).[8] Several office memoranda stipulated into evidence, *see* PTO at ¶ 14, indicate that Ms.

Grant was informed seven times by five different supervisors that her job performance and her L/A record were unsatisfactory, and that, if not improved, Ms. Grant would be recommended for dismissal. *See* Def.Ex. AA–HH. Two of these cautionary incidents were described at trial in the testimony of Philip Alfieri and Florence Yee, an employment interviewer at Morgan whose responsibilities included interviewing employees returning from leave. *See* Tr. at 58, 77.

Mrs. Yee testified that plaintiff requested a transfer in 1976, upon return from her second maternity leave, because of her attendance at college. *See* PTO at ¶ 5(10); Tr. at 80. Mrs. Yee denied the request because of plaintiff's unsatisfactory performance and L/A records and placed plaintiff on "final warning" because of her L/A record. *See* Tr. at 84; PTO at ¶ 5(10). Similarly, Mr. Alfieri testified that in 1978 he had spoken to the plaintiff regarding her L/A record. *See id.* Tr. at 58.

Finally, it has been stipulated that plaintiff's annual salary increase was deferred for six consecutive years, 1971–1976, because of her marginal employment record. *See* PTO at ¶ 5(9). At trial, plaintiff admitted that her salary was deferred, but she claimed that it was deferred because of Morgan's policy of discrimination against blacks and women. *See* Tr. at 31. There is no evidence in the record to substantiate this conclusory allegation. Therefore, the Court concludes that plaintiff's employment record was, at best, only marginally satisfactory and at various times unsatisfactory. The Court further concludes that plaintiff was excessively late and absent, that she knew of Morgan's policies regard-

---

**8.** Philip Alfieri gave detailed and credible testimony about Morgan's L/A policy. *See* Tr. at 55. Briefly, an employee would be given a cautionary warning if he had "four incidents within a three-to-four month period." *See id.* One incident would include the consecutive days that a person was absent. Therefore, if an employee was absent for three consecutive days, "it would be one incident for three days." *See id.* A formal warning resulted if the employee had four to six such incidents in an eight-month period and a final warning was issued if there were seven incidents within a twelve-month period. *See id.* at 56. According to Alfieri, cautionary and formal warnings had no bearing on a decision to promote, but an employee on final warning could not be promoted. *See* Tr. at 70. Ms. Grant was on final warning at least twice. *See* Def.Ex. BB, GG.

ing excessive L/A's, and that her salary increases were deferred on these bases.

*Promotions/Transfers*

Ms. Grant testified that in 1974 she was concerned because her name was on a separate time sheet and she was being paid less than the other workers. *See* Tr. at 17. She claimed that she brought this concern to the attention of Gladys Wavra, an assistant personnel secretary in the Stock Transfer Department. Ms. Grant testified that, in light of her pursuit of a college degree, she asked Mrs. Wavra for a promotion. *Id.* Plaintiff testified that Mrs. Wavra informed her that the available positions were only for college graduates. *Id.*

While Mrs. Wavra did not testify, there was other credible testimony adduced at trial to refute plaintiff's claim. Plaintiff testified that when she returned to work and continued pursuing her degree, she noticed that white males without high school diplomas were being promoted above her. *See* Tr. at 18. Therefore, she claimed, she complained to Mrs. Yee about this situation in 1976, and also requested a promotion. *Id.* Plaintiff alleged that Mrs. Yee told her that she was not eligible for a promotion without a college degree, and that Mrs. Yee wrote up a warning because of plaintiff's complaint about the promotion of white males. *Id.* at 19. These claims were likewise refuted by the following evidence, which the Court finds credible.

Although it is undisputed that upon return from her second maternity leave Ms. Grant spoke to Mrs. Yee about a promotion or transfer, Mrs. Yee's version of what occurred was very different. *See* PTO at ¶ 5(10); Tr. at 78. Mrs. Yee testified that plaintiff's request was refused for two reasons. First, it was Morgan's policy to reassign an employee returning from leave to his previous position or a similar one if the prior position was unavailable. *See* Tr. at 82. This policy of placing a returning employee in his former position before the employee could apply for a promotion was corroborated by Mrs. McGlynn, a vice president of Morgan. *See* Tr. at 37. Secondly, as described more fully *supra*, Mrs. Yee cited plaintiff's poor job performance and L/A record as grounds for her refusal of plaintiff's request. *See* Tr. at 80–84; PTO at ¶ 5(10).

Mrs. Yee also testified that she had never told plaintiff that the available positions were only open to college graduates or that a college degree would entitle her to an automatic promotion. *See* Tr. at 85. Finally, Mrs. Yee contradicted plaintiff's assertion that plaintiff had complained about the promotion of white males, *see id.*, and also testified that the "final warning" issued to plaintiff was to inform Ms. Grant that the company expected her job performance and her attendance record to improve upon her return to stock transfer duties. *See id.* at 83–84.

The Court finds Mrs. Yee's testimony to be very credible. It must be noted that Ms. Grant was unable to substantiate her claim that less qualified white males were being promoted above her. Upon inquiry by this Court, plaintiff could not give even the first name of one white male with lesser qualifications who was promoted. *See* Tr. at 23.

Plaintiff returned to work and after a time was granted her third maternity leave of absence. Upon return from this leave, on February 28, 1979, she met with Robert Cranmer, personnel representative for the Employee Unit, and requested a promotion to a "college-entry position" in the Public Relations, International Banking or Foreign Exchange Departments. *See* PTO at ¶ 5(13); Def.Ex. HH. Plaintiff apparently believed that she was entitled to one of these ephemeral positions because Morgan had a policy of rewarding employees who received a college degree with automatic promotions to "college entry positions," and she had received her B.A. in Economics from Queens College. *See* Complaint at ¶ 15(b).[9]

---

**9.** Plaintiff claimed that Morgan had a policy of reimbursing employees for the costs of attending college. *See* Tr. at 21. She also claimed that Morgan did not fully reimburse her costs. *See id.* Mrs. McGlynn testified that it was Morgan's policy to reimburse employees for all

There is, however, substantial credible evidence that no such policy existed, and indeed no job classification of "college level position" existed. Mrs. McGlynn testified that "employees were considered for promotions without having degrees." *See* Tr. at 40. Mr. Alfieri, Mrs. Yee and Mrs. McGlynn all testified that a college degree did not entitle an employee to an automatic promotion. *See id.* at 40 (McGlynn), 56 (Alfieri), 91 (Yee). Rather, the credible evidence shows that at Morgan, promotions were designed to recognize superior job performance; education was only one of the several factors which would be considered in the decision whether or not to grant a promotion. *See id.* at 40, 54, 60, 62; *see also* Def.Ex. II (Morgan's Personnel Guide for Supervisors). Accordingly, this Court finds that there were no "college level positions" *per se,* and that Morgan did not have a policy of automatically promoting an employee who received a college degree.

Plaintiff alleged that Mr. Cranmer told her that she would not be promoted, that he would hire an outsider instead, and that if she could not accept this, she should resign. *See* Tr. at 19. The evidence shows, however, that Mr. Cranmer conferred with Florence Yee and his supervisor, Mrs. McGlynn, on the status of Ms. Grant. *See* Tr. at 41, 89. "Her request for promotion was denied because [h]er record ... [was] satisfactory and nothing more." *See* Def.Ex. HH (Office Memo of Robert Cranmer dated March 1, 1979). Mrs. McGlynn testified that "[h]er record was not as good as others who were promoted." *See* Tr. at 50. The overwhelming weight of the credible evidence shows that Mr. Cranmer, in fact, offered plaintiff her prior position in accordance with Morgan's policy regarding returning employees. *See* PTO at ¶ 5(14); Def.Ex. HH, KK (Letter of Walter Eiseman, Senior Vice President of Morgan, dated March 16, 1979); *see also* Tr. at 41–42 (McGlynn).

## SUMMARY OF FINDINGS AND CONCLUSIONS

Thus, the Court finds that plaintiff's final request for a promotion was denied for three reasons: (1) Morgan's policy of placing a returning employee in her previous position; (2) plaintiff's marginal job performance; and (3) plaintiff's record of excessive L/A's. The Court also finds that plaintiff was properly offered her former position of "Control Clerk I," and that there is no credible evidence of conduct or statements by Cranmer, or anyone else employed by Morgan, which would support plaintiff's claims of discrimination or, for that matter, her constructive discharge claim.

## DISCUSSION

■ The Court further finds, on all of the evidence, that Morgan did not intentionally discriminate against the plaintiff in any of its decisions to deny her a promotion.[10] This conclusion is buttressed by

---

grades of "C" or better. *See id.* at 40. Plaintiff has not submitted her college transcripts or any other documentation to show that she was not properly reimbursed. Indeed, in her letter of resignation, plaintiff stated: "It is unfortunately [sic], that *after the company has invested so much money towards my educational advancement,* the organization has found it difficult to place me in a position wherein I can better utilize my skills...." *See* Def.Ex. JJ (Letter of Resignation dated March 2, 1979) (emphasis added); *see also* Pl.Ex. C.

**10.** Two preliminary matters concerning plaintiff's § 1981 claims must be addressed. First, defendant has interposed the statute of limitations as a partial defense which would bar all claims arising prior to July 15, 1978. In a § 1981 case, the controlling statute of limita-

tions is provided by the applicable state statute. *See Johnson v. Railway Express Agency,* 421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 (1975). The Second Circuit has determined that the statute which is applicable to causes of action arising in New York is CPLR § 214(2), which mandates a three-year limitations period. *See Keyse v. California Texas Oil Corp.,* 590 F.2d 45, 47 (2d Cir.1978) (per curiam); *Vulcan Society v. Fire Department of White Plains,* 82 F.R.D. 379, 393 (S.D.N.Y.1979). In *Johnson,* the Supreme Court also held that a timely filing of charges with the EEOC under Title VII does not toll the running of the statute of limitations of a companion § 1981 claim. *See Johnson, supra,* 421 U.S. at 465–66, 95 S.Ct. at 1722–23; *see also Cates v. Trans World Airlines, Inc.,* 561 F.2d 1064, 1072–73 (2d Cir.1977).

credible testimony which tended to show that Morgan successfully promoted a significant number of minorities and women, *see* Tr. at 45–46, 62,[11] and that all of those promoted had performance evaluations superior to Ms. Grant's. *See id.* at 50.

 Indeed, it is clear from the evidence referred to above that plaintiff failed even to make out a *prima facie* case.[12] Ms. Grant successfully satisfied only the first *prima facie* element, namely, that she is a member of a protected class. The critical shortfall was that plaintiff failed to establish that she was qualified for an available position.

Plaintiff's claim of discrimination stemmed from her erroneous belief that it was Morgan's policy to automatically promote employees who earned a college degree to a "college level position." *See*

Plaintiff's complaint was filed with this Court on July 15, 1981. Therefore, all of her § 1981 claims alleging discrimination occurring prior to July 15, 1978 are time-barred and must be dismissed. There is no allegation of discriminatory conduct occurring from July 15, 1978 until September 1, 1978, which was the starting date of plaintiff's third and last maternity leave. *See* Def.Ex. UU (Time Sheet). Accordingly, plaintiff's § 1981 claims are limited to those she has asserted under Title VII, namely, the 1979 promotion and constructive discharge claims.

The other threshold question concerns the applicable legal standard in a § 1981 claim. The Second Circuit has held that both Title VII claims and § 1981 claims are evaluated under the same standard, as set forth by the Supreme Court in *McDonnell Douglas, supra,* 411 U.S. at 802–04, 93 S.Ct. at 1824–25. *See Martin v. Citibank, N.A.,* 762 F.2d 212, 216–17 (2d Cir.1985); *Choudhury v. Polytechnic Institute of New York,* 735 F.2d 38, 44 (2d Cir.1984). Therefore, since both the § 1981 and the Title VII claims involve the same factual allegations and must be evaluated under the same legal standards, the two claims will be discussed together.

11. Plaintiff submitted statistical evidence to support her class certification motion. Her evidence consisted of a report prepared by defendant in 1978, which reveals that of the 1575 officials and managers employed by defendant, 78% were white males, that of the 776 professionals, 56% were white males, and that of the 3,682 office and clerical employees, 24% were white males. Plaintiff concluded that the less prestigious, lower-paying jobs were disproportionately filled by black females.

These statistics were found not to be meaningful because there was no "evidence regarding the presence of qualified blacks or females in the relevant markets." *See Grant, supra,* 548 F.Supp. at 1192; *see also Hazelwood School District v. United States,* 433 U.S. 299, 308 n. 13, 97 S.Ct. 2736, 2742 n. 13, 53 L.Ed.2d 768 (1977).

12. In order to sustain a disparate treatment claim under Title VII and a purposeful discrimination claim under § 1981, the plaintiff must establish a *prima facie* case as determined by the Supreme Court. *See McDonnell Douglas, supra,* 411 U.S. at 802, 93 S.Ct. at 1824. The

plaintiff has the initial burden of demonstrating by a preponderance of the evidence that:

(i) she belongs to a racial minority;
(ii) she applied and was qualified for a job for which the employer was seeking applicants;
(iii) despite her qualifications, she was rejected;
(iv) after her rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

*See id.* This test has been applied to allegedly discriminatory promotion practices. *See United States Postal Service Board of Governors v. Aikens,* 460 U.S. 711, 714–15, 103 S.Ct. 1478, 1481, 75 L.Ed.2d 403 (1983); *Knight v. Nassau County Civil Serv. Comm'n,* 649 F.2d 157, 160 (2d Cir.), *cert. denied,* 454 U.S. 818, 102 S.Ct. 97, 70 L.Ed.2d 87 (1981).

Once a plaintiff establishes a *prima facie* case, there is a rebuttable presumption that the employer has engaged in unlawful discrimination. *See Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 254–55 and n. 10, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207. It is clear that the plaintiff retains the ultimate burden of persuasion throughout the action. *See id.* at 256, 101 S.Ct. at 1095. The burden of production, however, shifts to the employer "to articulate some legitimate, nondiscriminatory reason" for the denial of the promotion. *See McDonnell Douglas, supra,* 411 U.S. at 802, 93 S.Ct. at 1824. To satisfy this intermediate burden, the defendant must "clearly set forth, through the introduction of admissible evidence, the reasons for plaintiff's rejection." *See Burdine, supra,* 450 U.S. at 255, 101 S.Ct. at 1094. Such evidence is sufficient to rebut the presumption of liability triggered by plaintiff's *prima facie* case if it "allow[s] the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." *See id.* at 257, 101 S.Ct. at 1096.

Once the presumption is rebutted, it drops from the case and the plaintiff must demonstrate that defendant's proffered evidence is a mere pretext. *Id.* at 255–56, 101 S.Ct. at 1094. This burden to show pretext "merges with the [plaintiff's] ultimate burden of persuading the court that she has been the victim of intentional discrimination." *Id.* at 256, 101 S.Ct. at 1095.

Complaint at ¶ 15(b). However, plaintiff failed to substantiate her claim that there was such a policy and also failed to prove that any such position in fact existed. Moreover, the defendant adduced substantial evidence that no such policy or position existed, and the Court finds defendant's evidence to be credible on this issue. In the absence of such a policy, plaintiff's claim of discriminatory treatment must fail, since she offered no other evidence to show that she was otherwise qualified for a promotion. *See Jayasinghe v. Bethlehem Steel Corp.*, 760 F.2d 132, 134 (7th Cir. 1985); *see also Meiri v. Dacon*, 607 F.Supp. 22, 23 (S.D.N.Y.1984), *aff'd*, 759 F.2d 989 (2d Cir.), *cert. denied*, —— U.S. ——, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985).

■ However, even assuming *arguendo* that plaintiff had made out a *prima facie* case, an examination of defendant's rebuttal evidence leads to the inescapable conclusion that the decision not to promote the plaintiff was not motivated by race or gender. There is overwhelming evidence that Morgan's reasons for not promoting plaintiff were her marginally satisfactory job performance and her history of excessive lateness and absence. Ms. Grant's employment record provided the defendant with a "legitimate, non-discriminatory reason" for the denial of her requested promotion. *See Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 255, 101 S.Ct. 1089, 1094–95, 67 L.Ed.2d 207 (1981).

Plaintiff's claim that the job evaluations submitted by the defendant are "almost totally subjective," *see* Pl. Post-Trial Memo at 45, must be rejected. Although the Second Circuit has recognized that "an employer may not use wholly subjective and unarticulated standards to judge employee performance for the purposes of promotion," *see Knight v. Nassau County Civil Serv. Comm'n.*, 649 F.2d 157, 161 (2d Cir.), *cert. denied*, 454 U.S. 818, 102 S.Ct. 97, 70 L.Ed.2d 87 (1981), it has admonished

that the "courts must refrain from intruding into an employer's policy apparatus or second-guessing a business's decision-making process. . . ." *See Meiri, supra*, 759 F.2d at 995.

■ The standards used by Morgan were not "wholly subjective." First of all, even plaintiff concedes that two of the categories used by Morgan to rate employees, accuracy and productivity, can be evaluated objectively. *See* Pl. Post-Trial Memo at 46. It cannot be said that an employer that evaluates its employees on job knowledge, accuracy and productivity is acting arbitrarily. Indeed, these may very well be the most concrete criteria upon which to base a promotion decision, because they specifically relate to an employee's past performance and his qualifications for a promotion, and therefore are objective criteria. *See Sweeney v. Research Found. of State Univ. of New York*, 711 F.2d 1179, 1185 (2d Cir.1983). Any basis for plaintiff's non-promotion was corroborated by her appalling lateness and absence record.

■ Finally, defendant's decision was in accordance with its policy of placing an employee returning from leave in her former position before that employee is eligible for a promotion. Such a policy does not violate Title VII, provided that policy is applied equally. *See Gilchrist v. Bolger*, 733 F.2d 1551, 1553–54 (11th Cir.1984). Plaintiff failed to adduce any evidence that this policy was not equally or uniformly applied. Indeed, the defendant adduced very credible evidence that this policy was, in fact, equally applied. *See* Tr. at 82 (Yee).

■ Plaintiff also complains that Morgan treated frequent absences, justified or not, as grounds for precluding a transfer or a promotion, *see* Tr. at 48, 100, and that Morgan treated a lateness of one minute as a full lateness. *See* Pl. Post-Trial Memo at 48.[13] However, Morgan is free

---

**13.** Plaintiff also alleged at trial that on one occasion Morgan recorded her as being late, but, at her insistence, the "National Time" was called. According to the plaintiff, she was in

fact four minutes early for work that day. The Court does not find this testimony to be credible, and, even were it to be credible, evidence of this solitary incident would not loom very sig-

to institute any attendance policy so long as it is applied equally to all employees. *See Gilchrist, supra,* 733 F.2d at 1553–54. Plaintiff utterly failed to adduce any competent proof that Morgan's attendance policies were not applied equally. This Court will not second-guess Morgan's business judgment with respect to its attendance policies where there is no evidence that these policies were used to discriminate against blacks or women. *See Meiri, supra,* 759 F.2d at 995. The Court concludes that plaintiff has failed to show that Morgan's L/A policy was a pretext for discrimination.

■ Plaintiff's final attack on Morgan focuses upon Morgan's failure to post job openings.[14] Plaintiff claims the failure to post job openings is *prima facie* evidence of discrimination. *See* Pl. Post-Trial Memo at 42–43. In support of this proposition, plaintiff cites *Brown v. Gaston County Dyeing Mach. Co.,* 457 F.2d 1377 (4th Cir.), *cert. denied,* 409 U.S. 982, 93 S.Ct. 319, 34 L.Ed.2d 246 (1972). In *Brown,* the Fourth Circuit panel stated that "the lack of objective guidelines for hiring and promotion and the failure to post notices of job vacancies are badges of discrimination that serve to corroborate ... the racial bias pictured by the statistical pattern of the company's work force." *See Brown, supra,* 457 F.2d at 1383.

The Fourth Circuit subsequently explained its holding in *Brown,* stating that the absence of job posting "does not necessarily make a *prima facie* case of discrimination, although in a proper case [it] may be considered evidence thereof." *See Roman v. ESB, Inc.,* 550 F.2d 1343, 1354 (4th Cir.1976). In the context of this case, the failure to post job notices, even if proven, is insufficient to substantiate a claim of intentional discrimination where there has been no showing of how the absence of posting resulted in discrimination against the plaintiff, and especially where, as here, plaintiff has not proffered any evidence, statistical or otherwise, sufficient to raise an inference of discrimination. *See Hudson v. Int'l Business Mach.,* 22 Fair Empl. Prac.Cas. 950, 952 (S.D.N.Y.1979), *aff'd,* 620 F.2d 351 (2d Cir.), *cert. denied,* 449 U.S. 1066, 101 S.Ct. 794, 66 L.Ed.2d 611 (1980).

## II.

### CONSTRUCTIVE DISCHARGE CLAIM

■ Plaintiff alleges that her resignation was prompted by defendant's discriminatory denial of her request for a promotion and therefore it constituted a "constructive discharge." *See* Complaint at ¶ 16(b). Plaintiff also claims that this "constructive discharge" was intended to deprive her of her pension rights before they had vested. *See id.* at ¶ 16(c). Since this Court has concluded that Morgan's conduct in this case was not discriminatory, and, indeed, has already noted that plaintiff's letter of resignation makes no mention of any discrimination by Morgan, *see* Def.Ex. JJ, the same unsubstantiated allegations of discrimination necessarily fail to establish a "constructive discharge." Therefore, the Court finds that plaintiff's resignation was voluntary. *See Grigsby v. North Mississippi Medical Center, Inc.,* 586 F.2d 457, 461 (5th Cir.1978).

■ Assuming *arguendo* that Ms. Grant had established discrimination, her constructive discharge claim would still fail because a showing of discrimination in the "absence of aggravating factors" cannot be the basis of a finding of "constructive discharge." *See Stephney v. Hospital for Joint Diseases,* No. 83–6123 (LBS), slip op. at 4–6 (S.D.N.Y. Dec. 4, 1985) [Available on WESTLAW, DCTU database]. A constructive discharge exists "when the employer

nificantly in light of plaintiff's well-documented history of excessive lateness and absences.

**14.** Plaintiff's Post-Trial Memorandum included several letters from church groups and shareholders which, complained, *inter alia,* of the fact that the defendant did not have a job posting system. *See* Pl.Ex. A–E. Also, on cross-examination, Philip Alfieri testified that he was unaware of any policy of making job openings available to employees. *See* Tr. at 67.

... 'deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary res-ignation.'" *See Pena v. Brattleboro Retreat*, 702 F.2d 322, 325 (2d Cir. 1983) (quoting *Young v. Southwestern Savings and Loan Ass'n.*, 509 F.2d 140, 144 (5th Cir.1975)). Also, "'the trier of fact must be satisfied that the ... working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.'" *Id.* (quoting *Alicea Rosado v. Garcia Santiago*, 562 F.2d 114, 119 (1st Cir.1977)). The Court is not satisfied that plaintiff has made such a showing in this case.

Courts have refused to find a constructive discharge based on discrimination alone, without the finding of "aggravating factors." *See, e.g., Clark v. Marsh*, 665 F.2d 1168, 1173-74 (D.C.Cir.1981); *Bourque v. Powell Electrical Manufacturing Co.*, 617 F.2d 61, 65 (5th Cir.1980). In particular, courts have found that a discriminatory denial of a promotion, without more, cannot amount to a constructive discharge. *See, e.g., Bristow v. Daily Press, Inc.*, 770 F.2d 1251, 1256 n. 4 (4th Cir. 1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 1461, 89 L.Ed.2d 718 (1986); *Irving v. Dubuque Packing Co.*, 689 F.2d 170, 172 (10th Cir.1982).[15]

■■■ While plaintiff expressed disappointment in Morgan's decision, *see* Tr. at 15, mere disappointment cannot make working conditions so intolerable that a reasonable person would resign. *See Bourque, supra*, 617 F.2d at 65. This conclusion is consistent with the underlying policies of Title VII, which "will be best served if, wherever possible, unlawful discrimination is attacked within the context of exist-

ing employment relationships." *See id.* at 66.

Giving her claim the generous interpretation accorded in *pro se* actions, *cf. Haines v. Kerner*, 404 U.S. 519 (1972), plaintiff's allegation also may be interpreted as a claim that she suffered humiliation because of Morgan's decision. *See* Pl. Post-Trial Memo at 2 (action brought "to regain a sense of dignity and achieve vindication"). Plaintiff, however, has not substantiated this claim with evidence. Plaintiff failed to produce any credible evidence of verbal abuse or transfer to a substantially inferior position. *See Martin v. Citibank, N.A.*, 762 F.2d 212, 221 (2d Cir.1985) (citing *Goss v. Exxon Office Systems Co.*, 747 F.2d 885, 888-89 (3d Cir.1984)); *see also Rosado, supra*, 562 F.2d at 119-20 & n. 4.

Finally, the reasonableness of plaintiff's decision to resign must be questioned where, as here, Morgan offered plaintiff her former position both before and after her resignation, and there were administrative and judicial remedies available to determine whether there had been discrimination against plaintiff. *Cf. Bourque, supra*, 617 F.2d at 66. Therefore, this Court finds that plaintiff was not constructively discharged.

Plaintiff's allegation that the constructive discharge was designed to deprive her of her pension rights is incredible for two reasons. First, there is no evidence to substantiate the claim that Morgan desired to deny plaintiff's pension rights. Secondly, if plaintiff had returned to Morgan's employ—and she had ample opportunity to do so—it is reasonable to presume that no pension rights would have been forfeited.

### CONCLUSION

■■■ In light of the foregoing discussion, it is evident that plaintiff has failed to

---

**15.** The courts cited have applied a stricter standard of proof in a constructive discharge claim. These courts required that the employee show that his working conditions have become intolerable, and also show that the employer's actions were a deliberate attempt to bring about his resignation. *See, e.g., Irving, supra,* 689 F.2d at 172. The Second Circuit standard does not require this showing of specific intent. *See*

*Pena, supra,* 702 F.2d at 325; *Martin, supra,* 762 F.2d at 221. However, even under this more liberal standard, courts have found that discrimination in violation of Title VII, standing alone, is insufficient to establish a constructive discharge. *See Bourque, supra,* 617 F.2d at 66; *see also Stephney, supra,* No. 83–6123 (LBS), slip op. at 4–5.

carry her ultimate burden of proving that Morgan's decision not to promote her was illegally motivated by considerations of race or gender. *See Burdine, supra,* 450 U.S. at 256, 101 S.Ct. at 1095. Indeed, plaintiff has provided this Court with nothing more than conclusory assertions that Morgan denied her equal opportunity.[16] Therefore, plaintiff's Title VII promotion claim must be dismissed, *see Fisher v. Fashion Institute of Technology,* 491 F.Supp. 879, 883 (S.D.N.Y.1980). Her § 1981 claim must be dismissed as well. *See Knight, supra,* 649 F.2d at 161–62. Plaintiff has also failed to prove her claim of constructive discharge. Accordingly, the Clerk of the Court is directed to enter judgment for the defendant on all remaining claims.

It is SO ORDERED.

See also, 638 F.Supp. 1555.

---

**16.** Plaintiff's post-trial submissions contained similar conclusory allegations. *See, e.g.,* Pl. Post-Trial Memo at 39–49. Because these allegations are unsupported by any factual data, the Court has determined that a further evidentiary hearing is not warranted. Plaintiff's allegation that she was the victim of racially motivated threats and an assault by a white Morgan employee named "Helen", *see* Pl. Post-Trial Memo at 49, are no longer legally cognizable. Even assuming *arguendo* that this scenario actually occurred in 1974, any § 1981 claims based upon it are barred by the statute of limitations. *See,* *e.g., Keyse, supra,* 590 F.2d at 47. Title VII claims which have not been presented to, or investigated by an administrative agency, or which are not within the scope of the EEOC investigation which reasonably could be expected to grow out of the administrative charge are properly subject to dismissal for lack of subject matter jurisdiction. *See Silver v. Mohasco Corp.,* 602 F.2d 1083, 1090 (2d Cir.1979), *rev'd on other grounds,* 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980); *Smith v. American President Lines, Ltd.,* 571 F.2d 102, 107 n. 10 (2d Cir.1978).