**Patricia JIRAK, Plaintiff,**

**v.**

**FEDERAL EXPRESS CORP.,**
**Defendant.**

**No. 90 Civ. 1367 (JES).**

United States District Court,
S.D. New York.

Oct. 27, 1992.

---

Gary Sinawski, New York City, for plaintiff.

Biederman, Hoenig, Massamillo, Ruff (Lawrence Klein, of counsel), New York City, Adler, Kaplan & Begy (Terrill E. Pierce, Martin K. LaPointe, of counsel) Chicago, Ill., Federal Express Corp. Legal Dept., (Calvin Williams, of counsel) Memphis, Tenn., for defendant.

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge.

Defendant in the above-captioned sex discrimination action moves for summary judgment. For the reasons that follow, defendant's motion is granted.

## BACKGROUND

Plaintiff was employed by Federal Express Corporation from November 5, 1987 until August 1, 1988 as a part-time courier. *See* Complaint ¶¶ 4, 9. Her job duties included delivery and pick-up routes on a fill-in basis for other couriers who had not reported to work and unloading cargo. *Id.* at ¶ 9.

During the first five months of her employment, plaintiff was absent from work three times and was late on numerous occasions, and consequently was issued two warnings stating that if this conduct continued, further disciplinary action may be necessary. *See* Defendant's Memorandum in Support of its Motion for Summary Judgment ("Def.Memo.") at Exs. C, D. On April 28, 1988, plaintiff was issued a "decision day" letter on account of another absence at which time she did not even inform the company that she would not be in that day. *Id.* at Ex. F.

Under the decision day policy of Federal Express, plaintiff was given a day off with pay and was required to present a written personal performance agreement acceptable to the manager, detailing specific actions to correct her attendance problem and stating a personal commitment to abide by that agreement. *Id.* at Ex. E. Although plaintiff promised to improve, she was late a few more times in the next two months and was issued a second decision day letter on June 17, 1988.[1] *See* Complaint Ex. H. Despite all of these warnings, plaintiff called in sick on August 1, 1988 with back pain and menstrual cramps and did not report for work.[2] Her employment was consequently terminated.

---

1. In the personal plan she submitted for this second decision day, plaintiff expressed her desire to improve and stated: "I understand and acknowledge that I have a serious problem with lateness and attendance. I realize that my performance has been below Federal Express [sic] standards. I realize that punctuality is vital to the Federal Express Operation." *Id.* at Ex. I.

2. Factual questions may exist regarding the actual reason for plaintiff's absence on August 1, 1988, *i.e.*, whether in fact she was sick, and if so, whether she was sick due to back pain or menstrual cramps, or both. However, for the purposes of this motion, defendants agreed that the Court should assume arguendo that in fact plaintiff was out sick with menstrual cramps and back pain on the day she was fired.

Plaintiff filed the instant action on March 11, 1990, after filing a timely complaint with the Equal Employment Opportunity Commission ("EEOC"), and after receiving a right to sue letter from the EEOC. *See* Complaint Exs. A, B. Plaintiff alleges that her termination was due to discrimination on the basis of sex in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), and the Pregnancy Discrimination Act ("PDA") of 1978, which amended Title VII, 42 U.S.C. § 2000e et seq. (1988); that she was paid less wages than male employees who performed substantially similar work in violation of the Equal Pay Act, 29 U.S.C. § 206(d) (1988); that she was subjected to outrageous conduct causing her mental anguish; and that she was defamed. For purposes of this motion, defendant has agreed that the Court may assume that plaintiff has established that she is a member of a protected class, that her job performance was in other respects satisfactory, that she was discharged, and that after her discharge the position remained open and the defendant continued to seek applicants from persons with her qualifications. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). Defendants contend, however, that there was a legitimate nondiscriminatory business reason for discharging plaintiff, *i.e.*, her poor attendance record and ultimately her violation of the second decision day agreement.[3]

## DISCUSSION

■ Plaintiff first argues that defendant's reason for termination supports her claim of sex discrimination because menstruation, like pregnancy, is a uniquely female attribute for which an employer may not lawfully discharge an employee. That argument is supported neither by federal statute nor by pertinent case authority.[4] While the PDA prohibits discrimination in employment "because of or on the basis of pregnancy, childbirth, or related medical conditions," 42 U.S.C. § 2000e(k), menstrual cramps are not a medical condition related to pregnancy or childbirth.

■ Moreover, the decision of an employer to treat a high number of absences regardless of the reason for those absences, as an attendance problem justifying disciplinary action does not violate Title VII so long as that policy is applied equally to all employees. *Gilchrist v. Bolger*, 733 F.2d 1551, 1553 (11th Cir.1984); *see Willingham v. Macon Telegraph Publishing Co.*, 507 F.2d 1084 (5th Cir.1975) (en banc); *Grant v. Morgan Guaranty Trust Co. of New York*, 638 F.Supp. 1528, 1537 (S.D.N.Y. 1986). Plaintiff has failed to adduce any evidence that Federal Express' policy of termination for violation of a second decision day letter was not applied equally to male and female employees. Indeed, when plaintiff was asked for names of persons with attendance violations who were treated differently than she was, she identified two male and two female employees. *See* Deposition of Patricia Jirak ("Jirak Dep.") at 389. The fact that her supervisor had discretion not to fire an employee who, due to exceptional circumstances, violates a second decision day agreement, does not support a rational inference that plaintiff's supervisor fired her for a discriminatory reason.[5] This is especially true since plaintiff has not set forth any evidence that Mr. Casale displayed any animus toward her, and in fact, testified at her deposition that he was "supportive" of her.

---

**3.** Defendant notes that in fact, its policy is to afford an employee only one decision day and plaintiff was given the benefit of two decision days. *See* Deposition of Peter A. Casale ("Casale Dep.") at 64.

**4.** Plaintiff's reliance on *E.E.O.C. v. H.S. Camp & Sons*, 542 F.Supp. 411 (M.D.Fla.1982), is misplaced. That court found the employer's reason for discharge, that plaintiff had abandoned her duties and disrupted the workforce, to be pretextual because plaintiff complied with company rules for leaving work when sick and a similarly situated white male was not terminated under similar conditions. *Id.* at 449–50.

**5.** Plaintiff's supervisor, Mr. Casale, testified at his deposition that, based on a hypothetical proposed by plaintiff's attorney, if an employee with plaintiff's attendance record called in from the hospital after having been run over by a taxicab, Mr. Casale could exercise his discretion not to fire that employee. Casale Dep. at 50–52. *See* Jirak Dep. at 509.

Furthermore, Title VII requires only that women shall be "treated the same for all employment-related purposes ... as other persons." 42 U.S.C. § 2000e(k). In *Newport News Shipbuilding & Dry Dock Co. v. E.E.O.C.*, 462 U.S. 669, 103 S.Ct. 2622, 77 L.Ed.2d 89 (1983), the Court found that petitioner's health plan was discriminatory against men because it gave married male employees a benefit package for their dependents that was less inclusive than the coverage provided to married female employees. *Id.* at 682–84, 103 S.Ct. at 2630–31. Similarly, in the instant case, to allow a female employee to violate a second decision day agreement where a male employee would be fired for that same violation would be discrimination against males on the basis of sex in violation of Title VII.

Plaintiff also attempts to argue that her assignments to unloading duty were discriminatory and led to her eventual termination when she called in sick with back pain allegedly stemming from those assignments. However, there is no evidence in the record to suggest disparate treatment in the assignment of unloading duty, and to the contrary, it is undisputed that this duty was given to the least senior employee, which was concededly plaintiff's status at the time that she was assigned these duties. *See* Casale Dep. at 14–16. Moreover, any claim that plaintiff was improperly discharged because she was rendered unfit for work by an on-the-job injury is not cognizable under Title VII, although it might be a basis for a workers' compensation claim.

Plaintiff's claim under the Equal Pay Act must also be dismissed since there is no evidence that plaintiff was paid less than similarly situated males. 29 U.S.C. § 206(d)(1). It is undisputed that defendant's wage scales are determined solely by seniority, so long as the courier received an overall evaluation score of at least "4," *see* Affidavit of Peter A. Casale ¶ 4, and that plaintiff attained an overall evaluation score of over "4" at all times and received all requisite wage increases.[6] *Id.* ¶ 5; Def. Memo. at 24, Exs. L, M, N.

Finally, plaintiff has apparently abandoned the claims of mental anguish and defamation, since she has presented no evidence in support thereof. Consequently those claims must be dismissed.

## CONCLUSION

Accordingly, for the reasons stated above, defendant's motion for summary judgment shall be and hereby is granted. The Clerk of the Court is directed to close the above-captioned action.

It is SO ORDERED.

---

6. Plaintiff put forth no evidence in support of her unequal pay claim and did not even respond to defendant's arguments on that issue.