**Sergio DE LA CRUZ, Plaintiff,**

v.

**NEW YORK CITY HUMAN RESOURCES ADMINISTRATION DEPARTMENT OF SOCIAL SERVICES, The City of New York, and Myra Berman, Individually and as a supervisor of the New York City Human Resources Administration Department of Social Services, Defendants.**

**No. 93 Civ. 8348 (CBM).**

United States District Court,
S.D. New York.

April 18, 1995.

---

Daniel J. Kaiser, New York City, for plaintiff.

Corporation Counsel of City of New York, Chlarens Orsland, Judith C. McCarthy, New York City, for defendants.

## OPINION

MOTLEY, District Judge.

### DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff Sergio de la Cruz, a caseworker for the Human Resources Administration of the City of New York (HRA), commenced this Title VII and Section 1983 action alleging that a supervisor's criticism, marginal rating of his communication skills, and a transfer to another unit without any loss of pay or benefits, constitute anti-Hispanic dis-

crimination. Defendants have moved for summary judgment pursuant to Rule 56(e) of the Federal Rules of Civil Procedure.

Plaintiff was first employed as a caseworker by New York City Human Resources Administration ("Human Resources") in August 1988. He was assigned to the Division of Adoption and Foster Care Services (DAFCS), Centralized Services, of the HRA. DAFCS is responsible for evaluating prospective parents and foster parents, which requires, among other matters, personal visits by caseworkers to perform home studies and to personally interview applicants and their references. In DAFCS several units perform various services. These units are Inquiry/Recruitment, which handles the initial inquiries from prospective applicants; Adoption/interstate Compact (unit 703), which is responsible for adoption home studies, interstate adoption and foster care home studies and special adoption and foster care home studies; Placement/Coordination, which oversees the placement of children under the auspices of DAFCS; and Foster Care/Home Finding (units 704 and 705), which assess prospective foster parents. DAFCS was under the supervision of Site Director Constance Weinberg.

Because the home studies reports were ultimately submitted to Family Court in connection with adoption or foster care proceedings, these reports needed to be done in a comprehensible, professional manner.

During the first two years of his employment, plaintiff received very good performance evaluations. In September 1990, plaintiff was transferred to unit 703 (adoption unit) and given the title of "acting" supervisor I position. At the same time twelve other case workers were placed in "acting" positions and performed "out-of-title" duties. Acting supervisors received no additional pay or benefits. Unit 703 required special investigatory and creative problem solving skills. In January 1991, Myra Berman, who is Caucasian, became the unit supervisor for the adoption unit and plaintiff's direct supervisor. Berman's supervisor was Doris Ayala who is Hispanic. The employees of unit 703 at the time of plaintiff's assignment included plaintiff; Donald Williams, an African–American;

Brahaspatie Ramsaroop, an East–Indian–Guyanese; and Ira Sohmer, a Caucasian. All of these employees had the title of "supervisor I." In this unit, all employees with the title of "supervisor I" performed caseworker duties, rather than supervision of a unit, which is the traditional duty of a supervisor. However, they carried a higher caseload than caseworkers in other units (i.e., 15 cases rather than 10).

Although plaintiff was generally a good employee, he frequently made errors in his written work, particularly concerning articles, word usage, and use of prepositions. He also demonstrated comprehension problems in gathering and recording information presented to him by English-speaking clients. Plaintiff concedes that he makes grammatical errors in the course of his work. When Berman gave plaintiff a performance evaluation for the period of October 31, 1991 to January 30, 1992, she gave plaintiff an overall rating of good but she also gave him a marginal rating in his verbal and written skills. The subsequent performance evaluation given for the period of January 31, 1992 to April 10, 1992 had him upgraded from marginal to good in his verbal and written communication skills. At about this same period of time, Berman also evaluated Donald Williams, an African–American and gave similar criticism of Mr. Williams' deficits in communication skills.

On March 30, 1992, Child Welfare Administration Executive Deputy Director Robert Little ended the agency policy of permitting employees to perform "out-of-title" work. As a result, all thirteen workers in "acting" titles, including plaintiff and Berman, were restored to their original civil service titles effective April 10, 1992. In total, 5 Hispanics, 2 whites, 6 African–Americans were reassigned to their former titles. Along with the reassignment, some of these employees were transferred to other units. Plaintiff, himself, was transferred to unit 704, based on the Little directive and Weinberg's belief that plaintiff could perform better in a unit where the written work would not be as demanding on his limited writing skills. Plaintiff's direct supervisor, Berman, did not participate in the decision. In this new unit, plaintiff re-

ceived the same salary and benefits as he had received in unit 703. The supervisor of unit 704 was Hispanic and following plaintiff's transfer one black and Hispanic case-worker were assigned to unit 703, plaintiff's old unit. On July 7, 1992, plaintiff filed an EEOC complaint and on September 30, 1993, the EEOC found no probable cause to believe that plaintiff had experienced discrimination.

Plaintiff alleges that defendants' reasons for the transfer are merely a pretext. He alleges, also, that his transfer from the adoption unit, unit 703, was a demotion because it was a more prestigious unit than unit 704. He adds that defendants transferred him because he is Hispanic and that he should have been allowed to remain in the unit. Plaintiff claims that Berman began to criticize his English skills even before he submitted any written work to her. Furthermore, plaintiff claims that Berman told him his problem was "cultural" and that when he was being transferred Weinberg, Berman's supervisor, told him that he and his new Hispanic supervisor "will understand each other better".

## I. Standard for Summary Judgment

■ "When a motion for summary judgment is made, and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits, or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). A Title VII plaintiff cannot "defeat a motion for summary judgment by offering purely conclusory allegations of discrimination." *Meiri v. Dacon,* 759 F.2d 989, 998 (2d Cir.), *cert. den.* 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985); *McLee v. Chrysler Corp.,* 38 F.3d 67 (2d Cir.1994) (Second Circuit reaffirmed the availability of summary judgment in discrimination cases); *Johnson v. Frank,* 828 F.Supp. 1143, 1147 (S.D.N.Y.1993) (Motley, J.).

## II. Applicable Statutes and Burden of Proof

■ Title VII provides that "it shall be an unlawful employment practice for an employ-er—(1) [t]o discharge any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1) (1993). While an employer is not permitted to terminate or demote an employee because of that person's national origin, this statute does not preclude such action for legitimate business purposes. *Price Waterhouse v. Hopkins,* 490 U.S. 228, 239, 109 S.Ct. 1775, 1784–85, 104 L.Ed.2d 268 (1989).

■ The legal framework for resolving discrimination claims is well established, and is principally set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Within this procedural framework, plaintiff bears, at all times, the ultimate burden of proving that he was the victim of discrimination. *St. Mary's Honor Center v. Hicks,* —— U.S. ——, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). First, plaintiff must prove a *prima facie* case of illegal discrimination by a preponderance of the evidence. *McDonnell Douglas Corp.,* 411 U.S. at 802, 93 S.Ct. at 1824; *Russo v. Trifari, Krussman & Fishel, Inc.,* 837 F.2d 40, 43 (2d Cir.1988); *Rovtar v. Union Bank of Switzerland,* 852 F.Supp. 180, 183 (S.D.N.Y.1994) (Motley, J.). Second, if plaintiff succeeds in proving the *prima facie* case, then defendants must articulate a legitimate, non-discriminatory reason for the employment action. *Id.* Third, once defendants give a legitimate, non-discriminatory explanation for the employment action, plaintiff must then prove by a preponderance of the evidence that defendants' explanation was a pretext to cover up actual discrimination. *Id.* 411 U.S. at 804, 93 S.Ct. at 1825. However, even if a trier of fact rejects the defendant's submission that its reasons were justified, the burden of proving that the motivation for plaintiff's termination was improper remains with plaintiff. *St. Mary's Honor Center,* —— U.S. at ——, 113 S.Ct. at 2749.

■ Plaintiff argues that there is direct evidence sufficient to establish illegal discrimination on the part of defendants against

plaintiff. He claims that Berman's remarks that plaintiff's problems were "cultural" and that she wanted to replace him with a black female and Weinberg's comment that plaintiff and his new Hispanic supervisor "will understand each other better" are direct evidence of discrimination. These remarks are supported by plaintiff's affidavit and not supported elsewhere in the record. These remarks standing alone appear to be the only "evidence" that plaintiff presents in his attempt to make out his claim for discrimination. However, defendants correctly indicate these ambiguous statements cannot be "evidence which, if believed, proves the fact without inference or presumption." *Brown v. East Mississippi Electric Power Ass'n.,* 989 F.2d 858, 861 (5th Cir.), *reh'g denied,* 995 F.2d 225 (1993). In a discrimination case, explicit and unambiguous statements of racial or ethnic hostility would be direct evidence. *See, E.E.O.C. v. Alton Packaging Corp.,* 901 F.2d 920, 923 (11th Cir.1990) (statement by company official that if it were his company he would not hire black people); *Brown v. East Mississippi Electric Power Ass'n,* 989 F.2d at 861–862 (supervisor's repeated use of term "nigger"). For further guidance on the issue of direct evidence, in Justice O'Connor's concurrence in *Price Waterhouse,* she stated that "stray remarks in the workplace," "statements by nondecisionmakers," and "statements by decisionmakers unrelated to the decisional process itself" do not "justify requiring the employer to prove that its hiring or promotion decisions were based on legitimate criteria." *Price Waterhouse,* 490 U.S. at 277, 109 S.Ct. at 1804. Berman was not involved in the decision to transfer plaintiff to unit 704 so her remarks cannot qualify as direct evidence. Moreover, Weinberg's comment that plaintiff and his new Hispanic supervisor would understand each other better is lacking in racial animus and cannot be considered in and of itself to be direct evidence of discrimination.

■ Even if this court did consider this statement to be direct evidence and shifted the burden to defendants to show that plaintiff would have been transferred for a legitimate business purpose as required by *Price Waterhouse,* there is clear evidence that plaintiff made numerous and critical errors in his written reports. It should be noted for the record that defendants have clearly articulated a legitimate business reason for its decision which is supported by documentary evidence.

III. *Prima Facie* Case is not made out.

■ Since there is no direct evidence of discrimination, plaintiff must prove by a preponderance of the evidence that: (1) he belonged to a protected class; (2) he was qualified for the position; (3) he was subjected to adverse employment action; and (4) the adverse employment action gives rise to an inference of unlawful discrimination based on national origin. *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093–94; *Rovtar,* 852 F.Supp. at 183. Plaintiff has failed to establish a *prima facie* case because he has no evidence to show he was qualified for the position, that he suffered adverse employment action, or that there was discrimination.

As plaintiff is Hispanic, it is undisputed that he is a member of a protected class under Title VII. However, plaintiff failed to demonstrate that he was qualified for the position of case worker in unit 703. It is undisputed from plaintiff's own work product that he makes numerous errors in written work including errors in word usage. It is thus self-evident that Berman's comment that plaintiff's English skills needed improvement was warranted, accurate, and proper. Two of the requirements for working in unit 703 were good writing and comprehension skills. From his own written work, plaintiff did not meet these standards. In this case, plaintiff cannot even claim to have suffered any adverse employment action, as he was not demoted or fired, but was transferred to another unit with no loss of benefits or wages. Further, defendants have articulated a legitimate, non-discriminatory reason for the transfer of the plaintiff. Plaintiff's transfer from Unit 703 was partially prompted by an agency-wide decision to end the practice of allowing individuals to work in "acting" positions. In fact several other workers who were not Hispanic were taken out of "acting" positions and transferred to different units.

For these reasons, plaintiff has failed to establish a *prima facie* case of discrimination and defendants are entitled to summary judgment as a matter of law.