**Adeyemo A. JIMOH, Plaintiff,**

v.

**ERNST & YOUNG, Defendant.**

**No. 94 Civ. 3391 (HB).**

United States District Court, S.D. New York.

Dec. 29, 1995.

Charles M. Powell, Jr., Powell & Anderson, New York City, for plaintiff.

Stephen L. Sheinfeld, Whitman Breed Abbott & Morgan, New York City, for defendant.

### *ORDER AND DECISION*

BAER, District Judge.

Plaintiff filed a race, color and national origin discrimination claim against his former employer under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, and Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981. Plaintiff claims that throughout the fourteen month period of his employment, defendant discriminated against him by failing to promote him to a newly created position and by treating him differently from other employees similarly situated. Plaintiff further claims that, on the basis of defendant's actions, defendant constructively terminated him.

Defendant moves this Court for summary judgment, arguing that plaintiff cannot substantiate his discrimination claim. I heard oral argument on this motion on November 3, 1995. For the reasons which follow below, defendant's motion for summary judgment is GRANTED.

## II. *Background*

Plaintiff Adeyemo Jimoh ("Jimoh") is an African–American male. Defendant Ernst & Young ("E & Y") is a partnership of certified public accountants who perform various tax and consulting services for clients throughout the United States.

E & Y hired plaintiff on November 18, 1991 as a Programmer in the Computer Systems Support Group in the General Counsel's Office at defendant's New York headquarters. Jimoh reported directly to Robert Kinnin, the Systems Support Manager, who in turn reported to Paul Gussenhoven, Director of Systems and Administration. When Jimoh joined E & Y, he was one of two Programmers at his level reporting to Kinnin. In this position, Jimoh was responsible for programming the Database Applications for the General Counsel's Office.

In July of 1992 Gussenhoven announced that he was leaving E & Y and that Kinnin would be assuming his job. In addition, Kinnin was to assume a leadership role in developing a strategic plan for the Systems Support Group. Based on this change, Kinnin decided to restructure the department; he eliminated his previous position and created a new position called Senior Supervisory Database Programmer ("SSDP"). The person hired for the SSDP position was to oversee the day-to-day programming operations of the department. After discussing his plans for the SSDP position with the Director of Human Resources, Kinnin had E & Y place an advertisement in *Mac Week*, a trade publication, inviting applications for the position. The advertisement listed the qualifications necessary for the position and stated, in relevant part, that the position "[r]equires 2+ years experience in supervising and supporting projects, and 5+ years computer industry experience...." Fewer than 20 persons applied for the SSDP position and a Junior Programmer position which was listed in the same advertisement.

After an initial screening process, Kinnin interviewed a number of applicants who had the necessary credentials for the position. Kinnin asked Jimoh to analyze samples of the applicants' programming code. Jimoh's only contact with the applicants was through his analysis of their programming code; Jimoh never met with or interviewed any of the applicants.

Plaintiff claims that he approached Kinnin to inquire about applying for the advertised position. Plaintiff further claims that Kinnin informed him that Kinnin and Gussenhoven would discuss with plaintiff the possibility of promoting him to the SSDP position; a discussion which neither Kinnin nor Gussenhoven recall. However, in his affidavit, Kinnin attests that even if Jimoh had approached him regarding the SSDP position, he would not have considered Jimoh for the position because Jimoh lacked the required two or more years of supervisory experience. E & Y did not hire anyone to assume the SSDP position and subsequently curtailed its search.

In September of 1992 plaintiff received a favorable job evaluation and a 5% salary increase. E & Y rated plaintiff's performance as "good." However, in November of 1992, Kinnin issued a disciplinary warning to plaintiff based on his late arrivals at work, extra-long lunch breaks and numerous discrepancies between E & Y's electronic log in/out system for employees and plaintiff's time sheets. Each of these instances is documented by E & Y records. Subsequently, plaintiff searched the General Counsel's computer files for documentary evidence to support a claim of discrimination against E & Y.

Plaintiff claims that E & Y denied him car service home one night, denied his requests to attend two professional seminars on company time and at company expense, and denied his request that E & Y purchase a particular computer program. Plaintiff asserts that defendant's conduct was discriminatory and, as such, resulted in his constructive termination.

Plaintiff continued to work for defendant until January of 1993 when he resigned and took a higher paying job at Stanley Kaplan. Plaintiff told his co-workers at E & Y that he was leaving for a "better opportunity."

### III. *Discussion*

#### a. *The Standard for Summary Judgment.*

Pursuant to Rule 56(e) of the Federal Rules of Civil Procedure summary judgment is appropriate where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The burden of proving that summary judgment is an appropriate remedy falls on the moving party and any ambiguity must be resolved in favor of the non-movant. *Gallo v. Prudential Residential Services,* 22 F.3d 1219, 1223 (2d Cir.1994). Summary judgment is appropriate when there is "little or no evidence" to support the non-movant's case and there is no genuine issue for the trier of fact. *Id.* at 1223–24.

Federal courts are reluctant to grant summary judgment in constitutional claims or when the state of mind of one party may be at issue. *Meiri v. Dacon,* 759 F.2d 989, 998 (2d Cir.1985), *cert. denied,* 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985). The Second Circuit stated that "when deciding whether [summary judgment] should be granted in a discrimination case, additional considerations should be taken into account. A trial court must be cautious about granting summary judgment to an employer when ... its intent is at issue." *Gallo,* 22 F.3d at 1224. Further, as Judge Scheindlin recently stated while sitting by designation on the Second Circuit, courts must be "mindful that caution must be exercised in granting summary judgment where an employer's intent is genuinely in issue." *Tomka v. Seiler Corporation,* 66 F.3d 1295, 1309–10 (2d Cir.1995).

In the case at bar, however, summary judgment is proper. A plaintiff's burden to defeat summary judgment is to produce *de minimis* evidence in opposition to the movant's claim that there are no triable factual issues. *Goenaga v. March of Dimes Defects Foundation,* 51 F.3d 14, 18 (2d Cir.1995).

Thus, to defeat summary judgment in this case, plaintiff must produce a minimal amount of evidence to demonstrate that he has a triable discrimination claim. I find that plaintiff fails to meet this standard and accordingly, grant defendant's motion for summary judgment.

#### b. *Plaintiff's Discrimination Claim.*

■ To substantiate a claim for discrimination based on race, color or national origin under Title VII and Section 1981, a plaintiff must meet the requirements of the tripartite, burden-shifting *McDonnell Douglas* test. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–05, 93 S.Ct. 1817, 1824–26, 36 L.Ed.2d 668 (1973), *aff'd, Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981), *St. Mary's Honor Center v. Hicks,* — U.S. —, —, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993). First, plaintiff must be able to establish a *prima facie* case of discrimination. *St. Mary's Honor Center,* 113 S.Ct. at 2747. Second, once plaintiff satisfies this requirement, the burden of proof shifts to defendants to articulate a "legitimate, non-discriminatory reason" for the employment action challenged by plaintiff. *Id.* Third, once defendant has given a legitimate, non-discriminatory reason for the challenged conduct, the burden shifts back to plaintiff to demonstrate by a preponderance of the evidence that defendant's legitimate reason is merely a pretext for discrimination. *Id.,* at —, 113 S.Ct. at 2749. The burden of proving that defendant's conduct was discriminatory and improper remains with plaintiff throughout the litigation. *Id.*

■ The crux of plaintiff's claim in the case at bar is that defendant discriminated against plaintiff by failing to promote him to the SSDP position. To meet the first hurdle of the three-part *McDonnell Douglas* test and shift the burden of proof to defendant, plaintiff must be able to satisfy four elements, that: (1) he belongs to a protected class; (2) he applied for a position for which he was qualified; (3) he was rejected despite his qualifications; and (4) the defendant continued to seek applications from other per-

sons with the same qualifications. *St. Mary's Honor Center,* —— U.S. at ——, 113 S.Ct. at 2747. There is no dispute as to the first prong of this four prong requirement for a prima facie case; plaintiff is a member of a protected class. However, plaintiff cannot carry his burden of proof on the remaining three prongs.

■ Specifically, plaintiff cannot prove that he was qualified for the SSDP position, that he was rejected for the position despite his qualifications and that defendant, after refusing to hire plaintiff for the position, continued to accept applications from others with similar credentials. According to the job description and the advertisement for the SSDP position, candidates must have at least two years of supervisory experience to perform the job successfully. The ad states:

### Senior Supervisory Database Programmer

You will be involved in a variety of major database projects. As project leader, you will help ensure the timely completion of projects, within budget. Requires 2+ years experience in supervising and supporting projects, and 5+ years computer industry experience, with a focus on Macintosh computers.

Aff. of Robert Kinnin, p. 5. Plaintiff was not qualified to apply for the SSDP position. According to plaintiff's affidavit, at the time he allegedly applied for the SSDP position he had 8 years of computer programming experience. Aff. of Adeyemo A. Jimoh. Based on my review of plaintiff's resume, I calculated his computer programming experience to equal 5 years at most. Aff. of Adeyemo A. Jimoh, Ex. A. Even assuming plaintiff had 8 years of programming experience, plaintiff's resume does not reflect that he had at least 2 years of supervisory experience in his employment experiences prior to joining E & Y. *Id.*

In his affidavit, plaintiff claims that in his capacity as a Senior Programmer at E & Y, he was able to develop his supervisory skills and did in fact act in a supervisory role by "providing guidance, training, technical support, and solutions for personnel within the firm." Aff. of Adeyemo A. Jimoh, p. 2. As-

suming this is true, plaintiff would still lack the required two or more years of supervisory experience necessary for the position because at the time he applied for the SSDP position, plaintiff had only been at E & Y for less than one year. Further, in plaintiff's performance self-evaluation titled "Ernst & Young Administrative Support Personnel Position Information Questionnaire Response Form," completed in November of 1992, plaintiff did not list that he performed any supervisory roles or duties in the "Primary Duties/Responsibilities" section of the questionnaire. Aff. of Stephen L. Sheinfeld, Ex. N.

Similarly, in the portion of the questionnaire titled "Organizational Relationships" plaintiff did not list anyone who reported to him directly, or that he supervised directly other employees. *Id.* Moreover, in the "PIQ Answer Sheet" section of the questionnaire, where an employee is to rate on a scale of 1 to 4 how often he performs a specific task or responsibility, plaintiff put the number 1 next to item 5(b), "Supervision Exercised," thereby indicating that this category did not apply to his position. *Id.* In contrast, in response to item 5(a), "Supervision Received," plaintiff marked the number 4 which translates into a rating of "Constantly: At least 66% of the time." *Id.*

Viewing the facts in the light most favorable to plaintiff, I must assume that Jimoh notified Kinnin of his interest in the SSDP position. Under *Cowan v. Prudential Insurance Co. of America,* 852 F.2d 688, 691 (2d Cir.1988), plaintiff could have argued that whether or not the alleged conversation between himself and Kinnin regarding the SSDP position even occurred creates a question of fact. However, assuming the initial conversation did take place, as I must do, plaintiff is still unable to prove a *prima facie* case of discrimination. Further, plaintiff's case can be distinguished from *Cowan* in two important ways. First, plaintiff here, unlike the plaintiff in *Cowan,* lacked the skills necessary to even be considered for the SSDP position. Second, in contrast to the defendant in *Cowan* which hired a non-minority candidate with similar credentials to fill the

open position, E & Y curtailed it search prior to filling the SSDP position.

According to Kinnin's affidavit, each application E & Y received for the SSDP position was screened by a member of the E & Y staff to determine whether or not the applicant had the required supervisory and programming experience. Aff. of Robert Kinnin, pp. 5–6. Kinnin then interviewed only those applicants who passed the screening phase. For each applicant interviewed, Kinnin asked Jimoh to analyze the applicant's programming code and evaluate their programming competence in Foxbase, the primary program used by the E & Y General Counsel's Office. *Id.* Thus, even assuming Jimoh notified Kinnin of his interest in this position, Jimoh still lacked the required experience for the position and would have been precluded from progressing past the screening process to an interview.

Plaintiff claims that E & Y had a policy of promoting from within the company to fill job vacancies and that E & Y should have considered him for the SSDP position under this policy. However, at the time of plaintiff's application for the SSDP position, E & Y had no announced policy of promoting employees from within the company. Rather, as stated in plaintiff's own deposition, this policy was in the drafting stages at the time plaintiff received the disciplinary warning from Kinnin, November 1992, and plaintiff only discovered the existing draft of this policy by searching the computer database files of the General Counsel's Office subsequent to the disciplinary warning. Supp.Aff. of Stephen Sheinfeld, Ex. A at p. 378.

Disregarding the method plaintiff used to learn of this draft policy, plaintiff would still not have qualified for promotion to the SSDP position even if I assume that the policy existed as an established E & Y policy at the time E & Y first advertised the SSDP position. According to the answers plaintiff provided when deposed, the draft policy required one year of service by an employee in their current position before they would be promoted to a new position. *Id.* As stated above, plaintiff joined E & Y in November 1991, E & Y began its search to fill the SSDP position in August 1992. At that time, plaintiff had only been with E & Y for 9 months. Thus, assuming that E & Y did have a promotion from within policy in existence in August 1992, plaintiff would not be qualified for a promotion to the SSDP position under the 1 year of service policy requirement.

In *de la Cruz v. Human Resources Administration*, 884 F.Supp. 112, 116 (S.D.N.Y. 1995), this Court granted summary judgment when the plaintiff employee failed to establish a *prima facie* case of discrimination. Much like the situation here, the plaintiff in *de la Cruz* was unable to provide direct evidence that his employer discriminated against him by transferring him to a different department. There, the court stated that plaintiff failed to provide "evidence to show he was qualified for the position, that he suffered adverse employment action, or that there was discrimination." *Id.* Similarly, plaintiff's case here should be dismissed because plaintiff fails to establish a prima facie case of racial discrimination.

Assuming, arguendo, that plaintiff is able to substantiate a *prima facie* case of discrimination and that defendant provided a legitimate, non-discriminatory basis for their actions, plaintiff could not prove that defendant's actions were merely a pretext for racial discrimination. Indeed, nowhere in his papers does plaintiff provide a scintilla of proof to the effect that the SSDP position and the qualifications therefore were constructed specifically to exclude plaintiff's application. In fact, just one month after E & Y began its search to fill the SSDP position, plaintiff received a favorable review of his job performance and a commensurate 5% pay raise. Furthermore, E & Y curtailed its search for the SSDP position and never filled the position.

Plaintiff claims that in addition to failing to promote him to the SSDP position, defendant discriminated against him on five separate occasions. Having reviewed the affidavits submitted by both sides, E & Y has demonstrated that each of these occasions and decisions came about as a consequence of company policy or a legitimate, non-discriminatory business reason. Plaintiff's evidence is insufficient to raise a triable issue of fact as to

whether E & Y's proffered reason was merely a pretext for discrimination.

Plaintiff's allegations consist of the following. First, plaintiff contends that he was given a rating of "good," as opposed to "outstanding" in a performance evaluation. Plaintiff fails, however, to cite any evidence that this evaluation was discriminatory or for any other reason undeserved. Further, commensurate with this evaluation, plaintiff received a 5% pay increase.

Second, plaintiff claims defendant discriminated against him by denying him car service to Staten Island after working overtime one night. However, on that occasion plaintiff failed to comply with E & Y procedures regarding overtime and the use of a car service. Furthermore, E & Y provided car service for employees to return to their homes and at the time of the request plaintiff resided in Manhattan, not on Staten Island.

Third, plaintiff alleges E & Y engaged in discriminatory conduct by refusing to allow him to attend two work related seminars on company time and money. E & Y felt that the seminars were not worthwhile and that, although plaintiff might have benefited personally from attending these seminars, E & Y did not foresee any derivative benefit for the company. Moreover, no other employee at plaintiff's level attended the seminars. Fourth, plaintiff claims defendant acted in a discriminatory manner by refusing to purchase a specific computer program suggested by plaintiff. Simply put, E & Y decided against purchasing the program because company personnel thought it was unnecessary.

Fifth and last, plaintiff claims that the November 1992 disciplinary warning which he received from Kinnin was discriminatory. However, defendant proffers a legitimate, non-discriminatory reason for disciplining plaintiff and cites plaintiff's unprofessional conduct as the basis for the warning. Defendant's records detail the following: (1) plaintiff's time sheets for the month of October overstated the hours he worked when compared with an electronic log in/out system used by E & Y, (2) plaintiff was late to work thirteen times throughout the month of October, ·and (3) plaintiff took lunch hours in excess of the one hour period allowed by company policy on sixteen occasions throughout October.

 To prove his racial discrimination claim, plaintiff must do more than simply disagree with defendant's business decisions. As a matter of law, an employee's disagreement with an employer's business decision is insufficient to prove discriminatory conduct. *Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1116 (2d Cir.1988). Plaintiff offers no factual basis for his claim of disparate treatment and cannot substantiate a *prima facie* claim of discrimination.

### b. Constructive Discharge Claim

 Plaintiff's complaint also includes a constructive discharge claim. As a matter of law, a constructive discharge claim must be dismissed unless there is sufficient evidence which would permit the trier of fact to infer that an employer deliberately created working conditions that were so difficult or unpleasant that a reasonable person in plaintiff's position would feel compelled to resign. *Spence v. Maryland Casualty Co.*, 995 F.2d 1147, 1156 (2d Cir.1993) (citations omitted). Courts apply an objective standard to constructive discharge claims and require that a plaintiff demonstrate "aggravating factors" in addition to allegations of discriminatory treatment to prove their claim. *Grant v. Morgan Guaranty Trust Co.*, 638 F.Supp. 1528, 1538 (S.D.N.Y.1986).

Here, as above, plaintiff fails to raise a triable issue of fact. Plaintiff left E & Y in January of 1993 to pursue a "better opportunity" with Stanley Kaplan. Even assuming that E & Y discriminated against plaintiff by not promoting him to the SSDP position, under the law, absent aggravating factors, plaintiff's decision to resign from E & Y would not amount to a constructive discharge. *See id.* at 1539.

Plaintiff cites the five occasions discussed above which plaintiff interprets as demonstrating defendant's discriminatory animus to be aggravating factors underlying his constructive discharge claim. As I stated previously, each of the five examples cited, taken individually or as a whole, are not examples of racial animus. Rather, they are merely business decisions which, although not to

plaintiff's liking, do not constitute discriminatory conduct or rise to the level of "aggravating factors" under the law.

Plaintiff's disappointment with defendant's failure to promote him, even when added to the five actions plaintiff cites as discriminatory, fails to meet the objective standard required for a constructive discharge claim. I find that defendant's behavior, taken as a whole, did not create a working environment so hostile that a reasonable person in plaintiff's position would be forced to resign. Accordingly, defendant's motion for summary judgment on the constructive discharge claim is granted.

Parenthetically, it is interesting to note that even if plaintiff proved a *prima facie* case of discrimination and/or constructive discharge, little if any damages could be awarded. Title VII is a restitutionary statute by nature, under which plaintiff would be entitled to back pay or loss of salary from the date of termination until the date judgment was entered. *See e.g., Dunlap–McCuller v. Riese Organization,* 980 F.2d 153, 159 (2d Cir.1992) (citation omitted). Here, plaintiff was not terminated; rather, he left E & Y voluntarily for a higher paying job and a "better opportunity" at Stanley Kaplan. Plaintiff did not lose any of his income when he left E & Y, in fact, his salary at Stanley Kaplan exceeded that of E & Y. Similarly, plaintiff would not be entitled to recover compensatory damages to which he would be entitled under Section 1981. *Cowan,* 852 F.2d at 690–91. Plaintiff here does not claim that he suffered severe emotional distress as the result of defendant's alleged discriminatory actions or that he sought professional help or counseling as a result of defendant's behavior.

### IV. *Conclusion*

For the reasons stated above, plaintiff has failed to establish a prima facie case of discrimination. Similarly, plaintiff has failed to establish his claim of constructive discharge. Consistent with this opinion, E & Y's motion for summary judgment is GRANTED.

SO ORDERED.