**Sergio DE LA CRUZ, Plaintiff–Appellant,**

v.

**NEW YORK CITY HUMAN RESOURCES ADMINISTRATION DEPARTMENT OF SOCIAL SERVICES; the City of New York; Myra Berman, individually and as a supervisor of the New York City Human Resources Administration Department of Social Services, Defendants–Appellees.**

No. 488, Docket 95–7472.

United States Court of Appeals, Second Circuit.

Argued Nov. 8, 1995.

Decided April 12, 1996.

---

merit.

Daniel J. Kaiser, New York City, for Plaintiff–Appellant.

Kathleen Alberton, Office of Corporation Counsel of the City of New York, New York City (Paul A. Crotty, Corporation Counsel; Larry A. Sonnenshein, Chlarens Orsland, Judith McCarthy, of counsel), for Defendants–Appellees.

Before: LUMBARD, KEARSE, and WINTER, Circuit Judges.

WINTER, Circuit Judge:

Sergio de la Cruz, a caseworker for the New York City Human Resources Administration Department of Social Services ("DSS"), brought this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et. seq.*, and under 42 U.S.C. § 1983. De la Cruz alleged that in April 1992, defendants transferred him out of the Adoption Unit, where he had worked since 1990, because he is Hispanic. The defendants, the DSS, the City of New York, and Myra Berman (de la Cruz's supervisor), moved for summary judgment. The parties submitted affidavits, deposition testimony, and other documentary evidence, including internal memoranda and performance evaluations. Judge Motley granted the defendants' motion. *De la Cruz v. New York City Human Resources Dep't,* 884 F.Supp. 112 (S.D.N.Y. 1995). We affirm, although on a somewhat different ground than that relied upon by the district court.

## BACKGROUND

On appeal from a grant of summary judgment we view the facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Henry v. Daytop Village, Inc.,* 42 F.3d 89, 92 (2d Cir.1994).

Based on the record before us, a trier of fact might find the following. De la Cruz, a native of Puerto Rico, began his service with DSS in August of 1988 in the Division of Adoption and Foster Care Services

("DAFCS"), Centralized Services. DAFCS is composed of several units including Inquiry, Adoption, Placement, and Foster Care. On September 17, 1990, de la Cruz was transferred into the Adoption Unit, where he assumed the title "Acting Supervisor I"—a level above his regular civil service rank. In this capacity, de la Cruz, who is bilingual, evaluated Spanish-speaking applicants seeking to adopt a child. As an "Acting Supervisor" he was expected to carry a larger caseload than regular caseworkers. Despite this increase in duties, de la Cruz did not receive additional remuneration or benefits.

In January 1991, Myra Berman, who is Jewish, was named supervisor for the entire Adoption Unit. As such, she became de la Cruz's direct supervisor. Berman reported directly to Doris Ayala, who is Hispanic. According to de la Cruz's affidavit, Berman was outwardly hostile to him from the moment she assumed her duties as supervisor of the Adoption Unit. For example, de la Cruz alleges that whenever Berman would hear him speaking Spanish in the hallway, she would tell him to "shut up." Additionally, de la Cruz alleges that Berman was unresponsive to his concerns that Spanish-speaking applicants were being assigned to English language orientation sessions. De la Cruz alleges that when he repeated these concerns to other supervisors, Berman retaliated against him by denying him overtime.

A year after Berman became the supervisor for the Adoption Unit, Child Welfare Administration Executive Deputy Director Robert Little issued a memorandum (the "Little Directive") ending the DSS agency-wide policy of permitting employees to perform "out-of-title" work. As a result, all employees in "acting" positions were restored to their original civil service ranks and were no longer permitted to perform the duties associated with higher titles. Along with the redesignation of titles, some employees were transferred to different units.

Upon hearing of the Little Directive, de la Cruz approached Constance Weinberg, the director of DAFCS, about staying on in the Adoption Unit as a regular caseworker. Several days later, Weinberg informed de la Cruz that he would not be allowed to remain in the Adoption Unit because of his poor English skills. Weinberg informed appellant that he would be transferred to the Foster Care Unit where his direct supervisor would be Deyania Bautista, an Hispanic female. Weinberg allegedly commented to de la Cruz that he and Bautista would "understand each other better."

About the same time, de la Cruz received a performance evaluation from Berman. Although the evaluation was generally positive—an overall rating of "good"—de la Cruz received only a "marginal" rating in the category of written home study reports. Specifically, the evaluation stated that de la Cruz's reports were "rarely completed within unit deadlines because he must spend a great deal of time translating his Spanish notes into English." The evaluation further stated that "[a]lthough [de la Cruz] attempts to submit clearly written work, his writing still needs substantial improvement." In the section entitled "Plans for Improvement" Berman suggested that appellant "register for courses that will help him communicate more effectively in English." Upon receiving this negative rating, de la Cruz met with Berman to discuss her criticisms of his performance. De la Cruz claims that Berman told him that his problem was "cultural."

De la Cruz transferred to the Foster Care Unit in April 1992. The Adoption Unit replaced de la Cruz with Jacqueline Peters, a black woman.

On July 7, 1992, de la Cruz filed a complaint with the Equal Employment Opportunity Commission ("EEOC"). His EEOC complaint charged that he had been demoted and returned to his previous assignment, given a negative performance evaluation, and retaliated against for his complaints about the treatment of Spanish-speaking applicants by denying him overtime to run Spanish language orientation sessions. After de la Cruz filed these administrative charges, the Adoption Unit hired Lillian Rivera, a bilingual Hispanic woman, as a caseworker at de la Cruz's civil service rank. In September 1993, the EEOC found no probable cause to believe de la Cruz had experienced discrimination. De la Cruz subsequently filed the present action.

## DISCUSSION

■ We review a district court's grant of summary judgment *de novo*. *Aslanidis v. United States Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir.1993).

### A. *Pretext Claim*

■ Appellant asserts both a "pretext" claim and a "mixed motives" claim. In "pretext" cases, the plaintiff must first present facts sufficient to establish a *prima facie* case of discrimination. In order to establish the *prima facie* case, plaintiff must demonstrate that: (i) he is a member of a protected class; (ii) he was qualified for the position; (iii) he was subjected to an adverse employment decision; and (iv) either the position remained open or he was replaced by someone not a member of his protected class. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *Owens v. New York City Hous. Auth.*, 934 F.2d 405, 408–09 (2d Cir.), *cert. denied*, 502 U.S. 964, 112 S.Ct. 431, 116 L.Ed.2d 451 (1991); *Sweeney v. Research Found. of State Univ. of New York*, 711 F.2d 1179, 1184–85 (2d Cir.1983).

■ An evidentiary proffer that satisfies the *McDonnell Douglas* test gives rise to an inference of discrimination, *see Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1239 (2d Cir.1995), and thereby shifts the burden of production to the employer to proffer a legitimate non-discriminatory reason for its action. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. At all times the burden of persuasion remains with the plaintiff, who must prove by a preponderance of the evidence that any seemingly legitimate reason proffered by the employer is, in reality, a pretext for unlawful discrimination. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 510–11, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993).

### 1. *Prima Facie Case*

■ As a Puerto Rican, de la Cruz is a member of a protected class. Because de la Cruz was replaced by a black female, he also satisfies the fourth prong of the *prima facie* case. The district court held, however, that de la Cruz failed to satisfy both the second and third elements of the *prima facie* test because he produced no evidence that he was "qualified" to remain in the Adoption Unit and because his lateral transfer to another unit within the same division of DSS did not constitute an adverse employment decision. *de la Cruz*, 884 F.Supp. at 116. We disagree.

■ We have previously held that the level of proof a plaintiff is required to present in order to establish a *prima facie* case of discrimination is low. *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir. 1994); *see also Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981) (plaintiff's burden of proof at the *prima facie* stage "is not onerous"). To satisfy the second element of the test, de la Cruz need not demonstrate that his performance was flawless or superior. Rather, he need only demonstrate that he "possesses the basic skills necessary for performance of [the] job." *Powell v. Syracuse Univ.*, 580 F.2d 1150, 1155 (2d Cir.), *cert. denied*, 439 U.S. 984, 99 S.Ct. 576, 58 L.Ed.2d 656 (1978); *see also Owens*, 934 F.2d at 409 ("*McDonnell Douglas* requires only a minimal showing of qualification to establish a *prima facie* claim").

■ The district court held that because de la Cruz lacked proficiency in English comprehension and writing, he was unqualified for work in the Adoption Unit. *de la Cruz*, 884 F.Supp. at 116. An examination of de la Cruz's written work product indicates that he often made grammatical errors, seemed to have trouble with word usage arising in part out of transliteration,[1] and had difficulty structuring English sentences. Nevertheless, despite these deficiencies, de la Cruz's superiors consistently rated his *overall* performance as a caseworker as "good." Although ordinarily courts will not second guess an employer's assertion that a particu-

---

1. Berman's affidavit states that de la Cruz once used "mean [to children]" when trying to say "good [to children]," a rather alarming error in the context of adoption. However, no written evidence of that error appears to exist, and we cannot assume the truth of Berman's assertion in reviewing a grant of summary judgment.

lar category on a performance evaluation is decisive, *see Ezold v. Wolf, Block, Schorr & Solis–Cohen,* 983 F.2d 509, 531 (3d Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 88, 126 L.Ed.2d 56 (1993), a performance evaluation that is positive overall is sufficient to withstand summary judgment at the *prima facie* stage of analysis.

■ Alternatively, the district court stated that de la Cruz was unable to make out a *prima facie* case of discrimination because his transfer to the Foster Care Unit did not constitute a legally cognizable adverse action. *de la Cruz,* 884 F.Supp. at 116. Again, we disagree. Title VII prohibits employers from discriminating with respect to "compensation, *terms, conditions, or privileges* of employment" on account of an individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e–2(a)(1) (emphasis supplied). Accordingly, we have held that the protections provided by Title VII are not limited to "instances of discrimination in pecuniary emoluments." *Rodriguez v. Board of Educ.,* 620 F.2d 362, 366 (2d Cir.1980) (transfer of art teacher from junior high school to elementary school held to be an adverse employment decision).

DSS returned de la Cruz to his normal civil service rank without any cut in pay and transferred him to the Foster Care Unit. He contends that by transferring him from the Adoption Unit to the Foster Care Unit, defendants moved him from an "elite" division of DSS, which provided prestige and opportunity for advancement, to a less prestigious unit with little opportunity for professional growth. Appellees argue that the two units are equal in status. Although de la Cruz's case is in this respect quite thin, the transfer arguably altered the terms and conditions of his employment in a negative way. This is sufficient to satisfy the third prong of the *McDonnell Douglas prima facie* test. *See Day v. Derwinski,* 771 F.Supp. 588 (S.D.N.Y.) ("If an employee's transfer to a different job is motivated by race or age considerations, it is obviously a discriminatory action affecting terms or conditions of employment."), *aff'd,* 953 F.2d 635 (2d Cir. 1991); *Collins v. Illinois,* 830 F.2d 692, 702–04 (7th Cir.1987) (collecting cases) (lateral transfer involving same pay and benefits but change in responsibilities held to be an adverse employment action). We therefore conclude that de la Cruz successfully presented a *McDonnell Douglas prima facie* case. The question of whether de la Cruz has been harmed by the transfer would be a question of fact for trial.

### 2. *Pretext*

■ We turn next to the question whether appellees proffered a legitimate non-discriminatory reason for de la Cruz's transfer, and, if so, whether he is able to demonstrate that such a reason was pretextual. The district court held that the Little Directive abolishing the practice of allowing individuals to perform "out-of-title" work in "acting" positions constituted a legitimate non-discriminatory reason for de la Cruz's transfer which entitled defendants to summary judgment. *de la Cruz,* 884 F.Supp. at 116. De la Cruz argues that this cannot be the real reason for his transfer because the Little Directive required only that he be returned to his original civil service rank, not that he be transferred to another unit. Indeed, he was replaced by a person holding his rank. We agree with de la Cruz, but the outcome is not affected.

The record is anything but clear regarding the impact of the Little Directive. Some transfers were apparently required, and the need for transfers and consequent openings provided an occasion for reconsidering the placement of various employees. The "proffer" of the Little Directive as the reason for de la Cruz's transfer is based on an isolated portion of Weinberg's deposition. However, she repeatedly professed a lack of memory concerning the transfer and whether there was room in the Adoption Unit for someone of de la Cruz's reduced rank after the issuance of the Little Directive. She was not questioned about whether the Little Directive caused an opening in the unit to which de la Cruz was transferred or whether the Little Directive created a need for Peters to be transferred.

We do not believe that Weinberg's deposition testimony, read as a whole, indicated that the Little Directive required de la

Cruz's transfer. He was one of 450 employees under Weinberg's supervision at the time of the transfer. Her deposition was taken more than two and one-half years after the transfer and is replete with declarations that she simply could not remember events concerning it, including the Directive's effect on the Adoption Unit. Moreover, the record leaves open the possibility that the Little Directive was connected with, even if it did not require, the transfer either because it created the opening to which de la Cruz was transferred, or because it required the transfer of Peters, or both. On this record, the Little Directive will not support a grant of summary judgment against de la Cruz. However, the isolated portion of Weinberg's deposition relied upon is also not the stuff of pretext.

Nevertheless, appellees have proffered a legitimate non-discriminatory motive for the transfer, de la Cruz's difficulties with English. The Little Directive no doubt required an adjustment of workloads based on the new employee ranks and was a suitable occasion for reexamining the placement of people whose ranks had been readjusted. The reexamination of placements following the Little Directive logically raised the issue of de la Cruz's language difficulties. While these difficulties do not render de la Cruz unqualified for purposes of a *McDonnell Douglas prima facie* analysis, they may constitute a legitimate non-discriminatory reason for the transfer.

Employment in the Adoption Unit of DSS requires superior writing and comprehension skills. By his own admission, de la Cruz has some difficulty writing in English, and examples of his written work in the record indicate that de la Cruz's writing was not up to par and created a risk of misunderstanding. His "marginal" performance evaluation is, therefore, consistent with those examples. Appellant argues that, notwithstanding the one-time "marginal" rating, the fact that he received an overall rating of "good" is enough to survive a motion for summary judgment. We disagree. *See Ezold,* 983 F.2d at 531 (positive evaluations in categories regarded as non-critical by the employer are insufficient to establish pretext). It is not

discrimination to replace a qualified worker with a more qualified worker. De la Cruz has offered no evidence that his replacement, Peters, had language difficulties, and the record indicates that Berman perceived such difficulties in only one other employee, not Peters.

De la Cruz argues that reliance on his language difficulties is pretextual because this criterion was not applied evenhandedly to Hispanics and non-Hispanics. *See McDonnell Douglas,* 411 U.S. at 804, 93 S.Ct. at 1825 (criterion must be "applied alike to members of all races"); *Grant v. Bethlehem Steel Corp.,* 635 F.2d 1007, 1014–15 (2d Cir. 1980) (pretext may be established where policy applied to black plaintiff was not applied to whites), *cert. denied,* 452 U.S. 940, 101 S.Ct. 3083, 69 L.Ed.2d 954 (1981). As evidence of this disparate treatment, de la Cruz relies upon the evaluations of Donald Williams, a black caseworker in the adoption unit who was also criticized in a performance evaluation for his poor writing skills, but was nevertheless not transferred. Like de la Cruz, Williams was criticized for his writing ability but nevertheless received an overall performance rating of "good." Unlike de la Cruz, however, Williams received a rating of "good" in the assertedly decisive category of writing skills despite the evaluator's comment that Williams's work product was "often poorly organized and confusing." De la Cruz has offered no other evidence demonstrating that a "good" rating for Williams was inaccurate, whereas de la Cruz's "marginal" rating is fully supported in the record. Because Williams's rating in the decisive category was higher than de la Cruz's, de la Cruz cannot demonstrate that he was treated differently than similarly situated non-Hispanics.

De la Cruz's assertion that Berman and Weinberg made allegedly biased remarks does not salvage his claim. The comments alleged (such as "your problem is cultural" and an Hispanic supervisor will "understand you better") are comments about de la Cruz's language abilities. Although "culture" is not limited to language, de la Cruz's problems that arose out of transliteration may properly be described as "cultural." Rather than

demonstrating pretext, these statements support appellees' claims about de la Cruz's ability to communicate effectively in English.

Finally, we note that the presence of other Hispanics in the Adoption Unit, including Ayala (Berman's supervisor) and Rivera, while not dispositive, confirms our conclusion that appellees' asserted non-discriminatory reasons for de la Cruz's transfer are not, as a matter of law, pretextual.

## B. *Mixed Motive Claim*

▮ De la Cruz also asserts a "mixed motives"—one legitimate, one discriminatory—claim. In a "mixed motives" case, a plaintiff must initially proffer evidence that an impermissible criterion was *in fact* a "motivating" or "substantial" factor in the employment decision. *Price Waterhouse v. Hopkins*, 490 U.S. 228, 258, 109 S.Ct. 1775, 1794–95, 104 L.Ed.2d 268 (1989); *Tyler v. Bethlehem Steel Corp.*, 958 F.2d 1176, 1181 (2d Cir.), *cert. denied*, 506 U.S. 826, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992). This burden is greater than the level of proof necessary to make out a *McDonnell Douglas prima facie* case. Once the plaintiff offers such evidence, the burden shifts to the employer to demonstrate that it would have reached the same decision even in the absence of the impermissible factor. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977); *Tyler*, 958 F.2d at 1181.

De la Cruz's proffer of evidence of an impermissible motive is inadequate. He argues, first, that Berman's alleged comment that his problems were "cultural" and Weinberg's comment that he and his new Hispanic supervisor "will understand each other better" are direct evidence of discrimination. As noted, however, these alleged statements, made in the context of a justified concern over language skills and problems arising out of transliteration, are not evidence of discrimination. *Cf. Brown v. East Miss. Elec. Power Ass'n*, 989 F.2d 858, 861 (5th Cir.1993) (repeated and explicit use of racial epithet sufficient evidence of direct discrimination). De la Cruz relies, second, upon Berman's alleged retaliation against him in denying him overtime to conduct Spanish-language orientation sessions. This claim is unsubstantiated. The record reveals no evidence that de la Cruz ever formally requested overtime, and there is some evidence that he received overtime for conducting English-language orientation sessions.

We therefore affirm.